UNITED STATES of America, Appellee,

v.

POSTERS 'N' THINGS LTD, an Iowa Corporation d/b/a World Wide Imports, d/b/a Forbidden Fruit, d/b/a Acty–Moore Gallery, Appellant.

UNITED STATES of America, Appellee,

v.

Lana Christine ACTY, a/k/a Chris Acty, Appellant.

UNITED STATES of America, Appellant,

v.

Lana Christine ACTY, a/k/a Chris Acty, Appellee.

No. 91–2426, 91–2429 and 91–2432.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 9, 1991.

Decided July 13, 1992.

Rehearing and Rehearing En Banc Denied Aug. 17, 1992.

John R. Sandre, Des Moines, Iowa, for Posters 'N' Things.

Robert T. Vaughn, Nashville, Tenn., for Acty.

Kevin E. Vanderschel and Lester A. Paff, Des Moines, Iowa, for appellee.

Before BEAM, Circuit Judge, HEANEY, Senior Circuit Judge, and LOKEN, Circuit Judge.

BEAM, Circuit Judge.

Posters N' Things, Ltd. ("Posters") and Lana Christine Acty were convicted of a variety of offenses related to the sale of drug paraphernalia. Posters and Acty appeal from their convictions, claiming that 21 U.S.C. § 857, prohibiting the sale of drug paraphernalia in foreign or interstate commerce, is unconstitutional. Acty also appeals on the ground that there is insufficient evidence to support her convictions for laundering monetary instruments and for aiding and abetting the manufacture and distribution of cocaine. The government cross-appeals claiming, among other points, that the district court, on the aiding and abetting count, erred by failing to sentence Acty to the mandatory minimum years of imprisonment required by 21 U.S.C. § 841(b). The government also claims that the district court erred by departing below the guideline-specified sentencing range. We affirm the district court in all respects.

## I. DISCUSSION

Posters, which was formed by Acty in 1977, operated three businesses: a diet aid store, an art gallery, and "Forbidden Fruit" (renamed "World Wide Imports"), a merchandise store. Posters and Acty came under investigation after law enforcement officers received complaints that the merchandise store was selling drug paraphernalia and after officers working on other drug-related cases discovered drug paraphernalia and drug diluents purchased from Forbidden Fruit.

Following an investigation, law enforcement officers executed search warrants in March 1990 for the merchandise store, the art gallery, and the residence of Acty and her husband, George Michael Moore. As a result of these searches, officers confiscated, among other items, various business and financial records, drug paraphernalia (e.g., pipes, bongs, scales, roach clips, cocaine mirrors), cash, chemicals used to di-

lute cocaine (e.g., Mannitol, Inositol, and Lidocaine), and catalogs and other advertisements from Forbidden Fruit's suppliers and from Forbidden Fruit itself. Posters and Acty (and Moore) were eventually indicted on a number of charges and a joint jury trial was held in December 1990.[1]

Following the trial, the jury found Acty and Posters guilty of use of interstate conveyance to transport drug paraphernalia, in violation of 21 U.S.C. § 857(a)(1) (two counts for each defendant), and conspiring to use an interstate conveyance to sell drug paraphernalia, in violation of 18 U.S.C. § 371 and 21 U.S.C. § 857(a)(1) (two counts for Acty; one count for Posters). Acty alone was also found guilty of aiding and abetting the manufacture and distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; investment of income derived from a violation of 21 U.S.C. § 841(a)(1), in violation of 21 U.S.C. § 854; laundering of monetary instruments, in violation of 18 U.S.C. § 1956(a)(1)(A); conspiring to launder monetary instruments, in violation of 18 U.S.C. § 371 and 18 U.S.C. § 1956(a); and engaging in monetary transactions with proceeds of unlawful activity, in violation of 18 U.S.C. § 1957 and 18 U.S.C. § 2 (two counts).

At sentencing, the district court fined Posters $75,000 and sentenced Acty to 108 months in prison on each count of conviction, to be served concurrently. In sentencing Acty, the district court departed from the guidelines by not grouping the offense level for the aiding and abetting count with the other counts, on the basis that Acty's case was "essentially a drug paraphernalia and money laundering case, not a case of aiding and abetting." Acty's Judgment at 5.

Posters, Acty, and the government appeal from the judgments of the district court. Posters and Acty claim that the drug paraphernalia statute, 21 U.S.C. § 857(a)(1), is unconstitutional for vagueness. Acty also claims that her convictions

for aiding and abetting the distribution of cocaine and for laundering monetary instruments are not supported by sufficient evidence. The government claims that the district court erred by not sentencing Acty to the mandatory minimum sentence of ten years' imprisonment required by 21 U.S.C. § 841(b) for the aiding and abetting count, and by departing from the guideline-specified sentence on the aiding and abetting count.

## II. DISCUSSION

### A. Constitutionality of 21 U.S.C. § 857.

Section 857 of Title 21 of the United States Code was enacted by Congress as part of the Anti–Drug Abuse Act of 1986. Section 857—which was repealed in 1990 and recodified with a slightly broader scope at 21 U.S.C. § 863—made it unlawful to sell drug paraphernalia in interstate or foreign commerce. Section 857 provided, in part:

(a) Unlawfulness

It is unlawful for any person—

(1) to make use of the services of the Postal Service or other interstate conveyance as part of a scheme to sell drug paraphernalia;

(2) to offer for sale and transportation in interstate or foreign commerce drug paraphernalia; or

(3) to import or export drug paraphernalia.

. . . . .

(d) Definition of "drug paraphernalia"

The term "drug paraphernalia" means any equipment, product, or material of any kind which is primarily intended or designed for use in manufacturing, compounding, converting, concealing, producing, processing, preparing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance in violation of the Controlled Substances Act (title II of Public Law 91–513). It includes items primarily intended or designed for use in ingesting,

---

**1.** This appeal does not include Moore. He failed to appear for sentencing and, apparently, is still a fugitive.

inhaling, or otherwise introducing marijuana, cocaine, hashish, hashish oil, PCP, or amphetamines into the human body, such as—

(1) metal, wooden, acrylic, glass, stone, plastic, or ceramic pipes with or without screens, permanent screens, hashish heads, or punctured metal bowls;

(2) water pipes;

(3) carburetion tubes and devices;

(4) smoking and carburetion masks;

(5) roach clips: meaning objects used to hold burning material, such as a marihuana cigarette, that has become too small or too short to be held in the hand;

(6) miniature spoons with level capacities of one-tenth cubic centimeter or less;

(7) chamber pipes;

(8) carburetor pipes;

(9) electric pipes;

(10) air-driven pipes;

(11) chillums;

(12) bongs;

(13) ice pipes or chillers;

(14) wired cigarette papers; or

(15) cocaine freebase kits.

(e) Matters considered in determination of what constitutes drug paraphernalia:

In determining whether an item constitutes drug paraphernalia, in addition to all other logically relevant factors, the following may be considered:

(1) instructions, oral or written, provided with the item concerning its use;

(2) descriptive materials accompanying the item which explain or depict its use;

(3) national and local advertising concerning its use;

(4) the manner in which the item is displayed for sale;

(5) whether the owner, or anyone in control of the item, is a legitimate supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products;

(6) direct or circumstantial evidence of the ratio of sales of the item(s) to the total sales of the business enterprise;

(7) the existence and scope of legitimate uses of the item in the community; and

(8) expert testimony concerning its use.

(f) Exemptions

This section shall not apply to—

(1) any person authorized by local, State, or Federal law to manufacture, possess, or distribute such items; or

(2) any item that, in the normal lawful course of business, is imported, exported, transported, or sold through the mail or by any other means, and traditionally intended for use with tobacco products, including any pipe, paper, or accessory.

21 U.S.C. § 857.

*1. Scienter*

We begin our analysis of Posters and Acty's constitutional challenge to section 857 by considering their claim that section 857 violates the Due Process Clause of the Fifth Amendment because it does not contain an express, *subjective* scienter or knowledge requirement. According to Posters and Acty, the language of section 857 and its legislative history demonstrate that section 857 is a strict liability criminal statute, and, therefore, it is unconstitutional because strict liability criminal statutes are only permitted for regulatory offenses or for offenses with small or monetary penalties. We disagree that section 857 violates due process and we hold that section 857 contains an *objective* scienter requirement.

There are a number of federal court opinions on section 857 and its scienter requirement. These cases can be summarized in three categories. First, there are a group of decisions that hold a subjective-type scienter must be read into section 857. In other words, the government must prove at trial that a defendant (such as Acty) intended that the items she offered for sale would be used with controlled substances or that she herself designed the items for use with controlled substances. *See, e.g.,*

*United States v. Main Street Distributing*, 700 F.Supp. 655, 666 (E.D.N.Y.1988) (The government is "required to prove at trial that [a defendant] either designed the items listed in the indictment for use with controlled substances or intended them to be for drug use"); *cf. United States v. 57,261 Items of Drug Paraphernalia*, 869 F.2d 955, 957 (6th Cir.) ("The person to whom the statute is being applied ... must have knowledge that there is a strong probability that the items will be used" for drug use), *cert. denied*, 493 U.S. 933, 110 S.Ct. 324, 107 L.Ed.2d 314 (1989).[2]

Second, some courts have decided, as the district court did in Posters and Acty's case, that section 857 contains an objective scienter requirement. In other words, that "[i]n some situations a violation may be established solely by reference to design features or objective circumstances, provided that the government shows the defendant's awareness of the general nature of the object." *United States v. Dyer*, 750 F.Supp. 1278, 1284 (E.D.Va.1990). Under this position, a defendant, "of course, remains free to contest the government's proof with her or his own objective facts." *Id.*

Third, is a category of cases in which courts have held that the language of section 857 cannot be construed to contain a scienter requirement and, in fact, Congress did not intend a scienter requirement. These courts have held that section 857 is unconstitutional as a strict liability offense. *See, e.g., United States v. Schneiderman*, 777 F.Supp. 258, 271 (S.D.N.Y.1991); *United States v. Murphy*, 91–NCR–61G, Order of Dismissal (D.Utah Jan. 7, 1992) (brief, unpublished order stating, "[T]he Court finds that the provisions of 21 U.S.C. 863(a) (formerly 21 U.S.C. 857) are unconstitutionally vague and that the statute does not provide a scienter or intent requirement as required by the Constitution").

█ The omission of subjective scienter language from a statute does not preclude a court from reading such a knowledge requirement into the statute. *See Morissette v. United States*, 342 U.S. 246, 250, 72 S.Ct. 240, 243, 96 L.Ed. 288 (1952). And if we follow cases like *Main Street Distributing*, and read a traditional subjective scienter into section 857, we would afford greater latitude to defendants like Acty and we would make it more difficult for the government to obtain convictions. Indeed, were it not so evident from the statute itself that section 857 contains an objective scienter component, we would construe section 857 in this way, and, thus, we would remand Posters and Acty's case for retrial under a differently stated standard. *Cf. Liparota v. United States*, 471 U.S. 419, 425, 105 S.Ct. 2084, 2088, 85 L.Ed.2d 434 (1985) (so long as there is no "indication of contrary purpose in the language or legislative history of [a] statute," a court can read a *mens rea* into a statute).

We see nothing in the language of section 857 that would require a subjective scienter interpretation.[3] Section 857 does not contain any exclusive, subjective scienter language, nor does it contain any language which implies an exclusive, subjective scienter. Nowhere in the statute, for example, does it state that a person is only prohibited from "knowingly" selling drug paraphernalia or from selling items with the "intent" that they be used as drug paraphernalia.[4] Instead, section 857 sim-

---

**2.** Although neither Posters and Acty nor the government argue in this case that section 857 contains a subjective scienter as interpreted by these cases, we must still consider the possibility in our analysis.

**3.** In addition to the language of section 857 itself, we also considered its legislative history to see if this record contradicted our reading of the statute. The legislative history, however, consists of only one report of one committee hearing on an early version of the statute. From this meager record, and by relying on one or two statements by one Representative, the

district court in *Main Street Distributing* concluded that "there can be no doubt that Congress did intend to include a [subjective] scienter element in § 857." *Main Street Distributing*, 700 F.Supp. at 664. We are unconvinced and have found that what little legislative history exists is either contradictory or of no help in interpreting the statute. *See also Dyer*, 750 F.Supp. at 1288–89.

**4.** In this respect, Congress appears to have deviated from the language of the Drug Enforcement Agency's Model Drug Paraphernalia Act of

ply states that it is unlawful to sell or deal in "drug paraphernalia," and it defines drug paraphernalia as "any equipment, product, or material of any kind which is primarily intended *or designed for use*" (emphasis added) with a controlled substance. We believe this "designed for use" language establishes unambiguously that the offense contains an objective scienter. The "design" of an object refers to its objective features, and in the case of some drug paraphernalia, items as they are designed have no function other than to be used with illicit drugs. As the district court explained in *Dyer*,

> [b]ecause these items may be identified by their physical characteristics and design features, there is no need for a demonstration of the defendant's subjective intent. Where the illicit purpose of the manufacturer or designer is embodied in the object itself, that purpose is apparent to all who perceive the object. "All that is required is for persons to open their eyes to the 'objective realities' of the items sold in their businesses."

*Dyer*, 750 F.Supp. at 1285 (quoting *Garner v. White*, 726 F.2d 1274, 1282 n. 8 (8th Cir.1984) (quoting *The Casbah, Inc. v. Thone*, 651 F.2d 551, 561 (8th Cir.1981), *cert. denied*, 455 U.S. 1005, 102 S.Ct. 1642, 71 L.Ed.2d 874 (1982))). An example of such an item is a "bong," which by design has no purpose (unless one imagines a highly contrived one, like "filling it with water and adding flowers") other than for use with illicit drugs. *Id.* at n. 12. *See also Village of Hoffman Estates v. Flipside*, 455 U.S. 489, 501, 102 S.Ct. 1186, 1195, 71 L.Ed.2d 362 (1982) ("designed for use" language in city's drug paraphernalia ordinance states an unambiguous standard that "encompasses at least an item that is

principally used with illegal drugs by virtue of its objective features").

Our conclusion that section 857 and its "designed for use" language creates an objective scienter is strengthened by nearly all of the other provisions of the statute. Subsection (d), for example, lists items which Congress evidently determined are intended or designed for illegal purposes by their very nature and irrespective of a defendant's subjective intent. *Dyer*, 750 F.Supp. at 1286. Moreover, subsection (e) provides a list of factors to be considered in determining whether an item is drug paraphernalia, and all of these factors are objective in nature—that is, none of them are dependent on the defendant's subjective state of mind. Thus, subsection (e) states that among the "logically relevant factors" to be considered are "advertising concerning its use," "evidence of the ratio of sales of the item(s) to the total sales of the business enterprise," and "expert testimony concerning its use." *See Dyer*, 750 F.Supp. at 1286. In addition, as the district court in *Dyer* also noted, the whole structure of section 857 supports an objective scienter reading: first the statute "provides a definition and enumerates examples of drug paraphernalia," then "it sets forth various objective factors to be assessed, followed finally by specific, objectively[-]based exclusions. The entire structure focuses on the items of drug paraphernalia, not on the purposes of the defendant." *Id.* at 1287.

■ Having concluded that section 857 contains an objective scienter element, we address Posters and Acty's claim that it is therefore unconstitutional as a "strict liability statute." If the conduct prohibited by section 857 were a criminal offense under common law, like that which was at issue in *Morissette*, we would be required

---

1979, upon which section 857 is modeled. The Model Act states, in relevant part:

> It is unlawful for any person to deliver, possess with *intent* to deliver, or manufacture with *intent* to deliver, drug paraphernalia, *knowing*, or under circumstances where one *reasonably should know*, that it will be used to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack,

> store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this Act.

Model Drug Paraphernalia Act, art. II, sec. B (1979) (emphasis added) (full text of Model Act is published in Appendix B of *Main Street Distributing*, 700 F.Supp. at 671–73). Congress's statute, quoted above, contains no such language in the statement of the offense in subsection 857(a).

to either read a traditional subjective scienter into the statute or—if such a construction was prohibited by the language or intent of Congress—to hold it unconstitutional as a violation of due process. *Morissette*, 342 U.S. at 263, 72 S.Ct. at 249. Section 857 does not concern conduct prohibited at common law, however, and, therefore, it is not unconstitutional simply on the basis that it does not contain a traditional subjective scienter requirement. The legislature has the prerogative with such statutory offenses to define the elements of the crime. *See Liparota*, 471 U.S. at 424, 105 S.Ct. at 2087 ("The definition of the elements of a criminal offense is entrusted to the legislature, particularly in the case of federal crimes, which are solely creatures of statute").

The Congress has passed statutes in the past which have severely modified or eliminated scienter, and we have upheld them against similar due process challenges. *See, e.g., Sipes v. United States*, 321 F.2d 174, 179 (8th Cir.1963) (26 U.S.C. § 5851, prohibiting the possession of certain firearms having barrels less than sixteen inches long, does not contain a scienter; "all the scienter which the statute requires" is that defendant knew he was in possession of a weapon). Perhaps the most analogous criminal statutes for purposes of this case are those involving obscenity. Consider, for example, the Supreme Court's decision in *Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974), where the Court held that the government is not constitutionally required to prove that a defendant knew the materials he dealt with were obscene. But, instead, it was sufficient if the government proved that the defendant had "knowledge of the contents of the materials he distributed, and that he knew the character and nature of the materials." *Id.* at 123, 94 S.Ct. at 2910. Thus, although section 857 does not grant a defendant the

protection afford by a subjective scienter, it is not unconstitutional simply by virtue of this omission.

### 2. *Vagueness*

Posters and Acty also claim section 857 violates due process because it is unconstitutionally vague, both facially and as applied.[5] We disagree.

A statute is unconstitutionally vague if persons "of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). Because we assume that a person "is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning." *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). Moreover, "if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Id.* at 108–09, 92 S.Ct. at 2299. Because of the nature of section 857, the vagueness standard that we apply is neither the most stringent nor the most tolerant of tests. Section 857 does not threaten "to inhibit the exercise of constitutionally protected rights," therefore it does not receive our most demanding scrutiny. *Village of Hoffman Estates*, 455 U.S. at 499, 102 S.Ct. at 1193. But it is also a criminal statute, and not merely an economic regu-

---

**5.** Posters and Acty's brief is less than clear on this point. Neither the exact nature nor basis for their claim is stated very well. In the heading of their opening brief, for example, they suggest that they only challenge section 857 as it was applied to them. In the text of the brief, however, and in their reply brief, they suggest

that the statute is vague on its face. And at oral argument, Posters and Acty's attorney only claimed to make a constitutional attack on the face of the statute. For certainty's sake, we will address all the arguments, at least so far as we can glean them from the briefs.

lation, therefore we do not treat it with the greatest tolerance. *Id.*

Posters and Acty have the burden to demonstrate that section 857 is unconstitutionally vague, and to succeed in their facial challenge they must prove that section 857 "is vague ' "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." Such a [statute] simply has *no* core.' " *Village of Hoffman Estates*, 455 U.S. at 495 n. 7, 102 S.Ct. at 1191 n. 7 (citations omitted). Posters and Acty must "demonstrate that the law is impermissibly vague in all of its applications." *Id.* at 497, 102 S.Ct. at 1193. Thus, "[i]f it is 'transparently clear' that some particular conduct is restricted by the [statute], the [statute] survives a facial challenge on vagueness grounds." *Id.* at 507–08, 102 S.Ct. at 1198 (White, J., concurring). Applying these principles, we cannot agree with Posters and Acty's claim.

Posters and Acty state that section 857 is unconstitutionally vague on its face because it fails to adequately define or describe what constitutes drug paraphernalia—that is, that it fails to give fair warning of what is prohibited. We believe, however, that section 857 properly defines a "core" of prohibited conduct, as required by due process. Subsection (d) defines drug paraphernalia as those items "primarily intended or designed" for use with illegal drugs and it lists examples of items (such as "water pipes" and "bongs") which are prohibited; subsection (e) lists factors to be considered in determining whether an item is drug paraphernalia; and, subsection (f) exempts certain persons and items "traditionally intended for use with tobacco products." We agree with the district court in *Dyer*, that this "clear core of prohibited conduct," "combined with the objective scienter standard, defeats a facial vagueness attack, as the 'interaction of definition and intent allays vagueness.' " *Dyer*, 750 F.Supp. at 1295 (quoting *Levas and Levas v. Village of Antioch*, 684 F.2d 446, 453 (7th Cir.1982)). We also agree

with *Dyer*, that the mitigating effect of scienter is not entirely lost simply "because the scienter requirement is objective in nature." *Id.* at 1296 (noting that "in *Hoffman Estates* the Supreme Court explained that the phrase 'marketed for use,' was not impermissibly vague when taken in conjunction with guidelines that referred to objective characteristics such as the manner of display and proximity to uncovered items").

With respect to the statute as applied, Posters and Acty's only point appears to be that the statute is unconstitutional because law enforcement officers who executed the search warrants were able to "totally ignore" the factors listed in subsection (e) for determining what constitutes drug paraphernalia. Brief for Appellants at 10. Thus, according to Posters and Acty, "the listed characteristics only augment the statute's vagueness." *Id.* Posters and Acty seem to be arguing, in other words, that section 857 is vague as applied because the government was able to completely disregard part of the statute and still obtain a conviction. We simply disagree, however, that the factors in subsection (e) were ignored. The law enforcement officers and, more importantly, the government at trial, repeatedly referred to or used the factors listed (e.g., Posters and Acty's advertising material, expert testimony) to establish that the items being sold were illegal. The actions of the government in this case are not evidence of the statute's vagueness.

## B. Sufficiency of Evidence

Acty claims that on two counts—money laundering and aiding and abetting the distribution of cocaine—the evidence is insufficient to support her convictions. We consider claims of insufficiency of evidence under a deferential standard of review. Briefly, the evidence is viewed in the light most favorable to the government; all reasonable inferences to support the verdict are given to the government; and, the credibility of witnesses whose testimony supports the government is not judged. *United States v. Williams*, 897 F.2d 1430, 1432

(8th Cir.1990). We consider Acty's claims with these principles in mind.

### 1. Money Laundering

█ First, Acty claims that the evidence is insufficient to support her conviction for laundering money, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).[6] To convict Acty of money laundering, the government had to prove that she knowingly conducted a financial transaction that involved the proceeds of an unlawful activity and that she did so with the knowledge that the financial transaction was designed in whole or in part "to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds" of the unlawful activity. 18 U.S.C. § 1956(a)(1)(B)(i). Acty claims that no evidence was presented to show that she concealed or disguised the proceeds from the Forbidden Fruit store. The evidence is by no means overwhelming, but we disagree that it is insufficient.

Acty knowingly sold both legal and illegal items in her Forbidden Fruit store for more than three years. According to the government, Acty deposited all of the money the store received—the store was mainly a cash business, taking in thousands of dollars each day—into one bank account. Acty kept business records, but, according to the government, it was impossible from these records to distinguish the amount received for the sale of legal items from the amount received for the sale of illegal items. Acty and Moore also deposited the receipts from the art gallery into this same account and then, over the course of time, they withdrew money from this account to purchase automobiles, retirement plans, art work, and other items. By conducting the financial end of her drug paraphernalia business in this way—commingling in one account, in an indistinguishable way, legitimate business receipts and illegitimate receipts—a reasonable juror could infer that Acty's actions were designed to disguise the nature or the source of the proceeds from her unlawful business. If we had sat on the jury, we might not have convicted Acty for money laundering. But in reviewing her conviction on appeal, we are unable to hold that the jury's conclusion was unreasonable.[7]

### 2. Aiding and Abetting the Manufacture and Sale of Cocaine

█ Second, Acty claims that the evidence is insufficient to support her conviction for aiding and abetting Randy Kennedy in the distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. On this count, the evidence is also sufficient. To be convicted of aiding and abetting, the government had to show at trial that Acty associated herself with the venture of manufacturing and selling cocaine, that Acty participated in the venture as something she wished to bring about, and that Acty sought by her actions to

---

**6.** Related to the money laundering count, Acty also argues that the district court erred by admitting the testimony of Donald Semesky, an expert witness who testified in support of the government's charge. Acty claims that the district court erred by permitting Semesky to testify that the checks Acty deposited in her bank account "affected interstate commerce" under section 1956(a)(1)(B), that the banks into which Acty deposited money were "financial institutions" under section 1956(c)(4), and that Acty's financial activities constituted a "concealment" of money under section 1956(a)(1)(B). Acty claims that by stating these "legal conclusions," Semesky prejudicially usurped the role of the judge and the jury. Rule 704(a) of the Federal Rules of Evidence, however, permits testimony in the form of an opinion that "embraces an ultimate issue to be decided by the trier of fact," and, after reviewing the record of Semesky's testimony, we disagree with Acty that Semesky's testimony did anything more than is permitted by the Rules.

**7.** In support of her argument that the evidence was insufficient, Acty notes that in *United States v. Sanders*, 928 F.2d 940 (10th Cir.),, cert. denied, — U.S. ——, 112 S.Ct. 142, 116 L.Ed.2d 109 (1991), the Tenth Circuit held that the appellant's actions in openly purchasing two automobiles in part with cash proceeds from drug activities did not constitution a violation of section 1956(a)(1)(B)(i) because these were ordinary financial transactions with no evidence of a design to conceal or disguise the source or nature of the proceeds. Acty's actions, however, are distinguishable; not only were Acty's financial transactions in much larger amounts and over a much longer period of time, but one could infer from her record keeping and bank deposits and withdrawals that Acty designed her operation to conceal or disguise her illegal proceeds.

make it succeed. *United States v. McCrady*, 774 F.2d 868, 874 (8th Cir.1985). To phrase this in another way, the government had to show that Acty had a "purposeful attitude" or that some affirmative participation by Acty encouraged the perpetrator. *Id.; United States v. Ivey*, 915 F.2d 380, 384 (8th Cir.1990). "Circumstantial evidence is 'intrinsically as probative as direct evidence' and may be the sole support for a conviction." *McCrady*, 774 F.2d at 874 (quoting *United States v. Two Eagle*, 633 F.2d 93, 97 (8th Cir.1980)).

The circumstantial evidence against Acty was considerable. The government showed at trial that Forbidden Fruit sold, among other items, scales and substances commonly used by cocaine dealers to dilute cocaine (e.g., Mannitol, Inositol, and Lidocaine). The government also showed that at least some of these substances have little or no lawful consumer use. The government, moreover, presented evidence of Acty's advertising, which suggested that she was selling the substances as diluents for cocaine. One product, called "Pseudo-Caine," was advertised by Acty as "The Hottest Active Cut In The Nation! Its the new cut product everybody who bought Mannitol is now begging for! ... 'Burns' just like the real thing." Joint Appendix at Tab No. 12. In addition, the government presented the testimony of four convicted cocaine dealers, including Randy Kennedy. Each dealer testified that he had bought cocaine diluents from Acty in amounts that drug dealers rather than users would purchase.

We believe that this evidence (and all the reasonable inferences that can be drawn from it) is collectively more than sufficient to support Acty's conviction for aiding and abetting the manufacture and sale of cocaine.

## C. Sentencing

In its cross appeal, the government argues that because the district court found that Acty had aided and abetted the manufacture and distribution of 100 kilograms of cocaine, the district court erred by failing to impose the mandatory minimum prison sentence of ten years, as required by 21 U.S.C. § 841(b)(1)(A). The government also argues that the district court erred by departing from the guideline-specified sentencing range on the aiding and abetting count. (The guideline range was 188 to 235 months in prison; Acty was sentenced to 108 concurrent months on all counts of conviction.) We agree that the statute's minimum sentence should have been imposed, but because the government failed to make a timely objection we decline to remand for resentencing. We also disagree with the government that the district court erred by departing from the guideline-specified sentencing range.[8]

First we consider the government's argument that Acty should be resentenced according to the mandatory 120 months in prison. The government is correct that once the district court made a finding of fact that Acty had aided and abetted in the manufacture and distribution of 100 kilograms of cocaine, this finding, as a matter of law, brought Acty's offense within the purview of 21 U.S.C. § 841(b)(1)(A)(ii). Section 2(a) of Title 18 provides that "[w]hoever commits an offense against the United States or aids [or] abets ... its commission, is punishable as a principal." "This provision is applicable to the entire criminal code." *United States v. Rector*, 538 F.2d 223, 225 (8th Cir.1976), *cert. denied*, 441 U.S. 963, 99 S.Ct. 2410, 60 L.Ed.2d 1068 (1979); *see also* U.S.S.G. § 2X2.1 (guidelines also provide that the offense level for aiding and abetting "is the same level as that for the underlying offense"). Thus Acty, who aided and abetted the manufacture and distribution of cocaine, is punishable under the provisions of 21 U.S.C. § 841(b)(1)(A)(ii), which provides that any person whose conviction involved "5 kilograms or more" of cocaine "shall be sen-

---

8. Curiously, Acty does not respond in her reply brief to the government's argument that she should have been sentenced according to the statute's mandatory minimum sentence. She only addresses the government's argument about the district court's departure from the guideline-specified sentencing range.

tenced to a term of imprisonment which may not be less than 10 years."

■ The government, however, failed to object to Acty's sentence when it was imposed by the district court. As a general rule, "[i]ssues not properly preserved at the district court level and presented for the first time on appeal ordinarily will not be considered by this court as a basis for reversal unless there would be a plain error resulting in a miscarriage of justice." *United States v. Meeks*, 857 F.2d 1201, 1203 (8th Cir.1988). It was plainly an error for the district court to sentence Acty below the statute's minimum, but Acty's sentence of 108 months (as opposed to the statute's required 120 months) does not result in a miscarriage of justice. *See United States v. Garcia–Pillado*, 898 F.2d 36, 39 (5th Cir.1990) (no contemporaneous objection; sentence of fifty-four months rather than the statute's required sixty months not a miscarriage of justice); *see also United States v. Ragan*, 952 F.2d 1049, 1049–50 (8th Cir.1992) (no contemporaneous objection; downward departure from guideline-specified sentencing range not a miscarriage of justice). The government, moreover, received notice—by the presentence investigation report and by the district court at the sentencing hearing— that the amount of cocaine involved exceeded five kilograms, and the government had ample opportunity to object to the sentence after the district court notified it that the sentence might be as low as 108 months. *See* Transcript of Sentencing, vol. IV at 471–75. Yet despite this notice and opportunity, the government failed to object.[9]

■ Next, we consider whether the district court erred in departing—on the aiding and abetting count—below the guideline-specified sentencing range of 188 to 235 months. A district court is permitted to depart downward from the guideline-specified sentencing range if it finds a mitigating circumstance "of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b); *see* U.S.S.G. § 5K2.0. In reviewing a district court's decision to depart, we must determine (1) whether, as a question of law, the circumstances relied on for departure are sufficiently unusual in kind or degree to warrant the departure, (2) whether, as a question of fact, the circumstances actually exist, and (3) whether or not the sentence is reasonable. *United States v. Thomas*, 914 F.2d 139, 143 (8th Cir.1990).

The government argues that the district court had no authority to depart because Acty was convicted of aiding and abetting and, as an aider and abettor, under the statutes and guidelines, she should be punished just as severely as a principal offender would be punished for the manufacture and distribution of 100 kilograms of cocaine. This reasoning may be fine in the abstract, but it does not take into account the circumstances of Acty's case. The district court, in summarizing its reasons for departing, stated the following:

> The Court finds that the Sentencing Commission, in determining the appropriate range for aiding and abetting sale and manufacture of controlled substances, did not have in mind nor adequately provide a lower range for the type of circumstances involved here. This is essentially a drug paraphernalia and money laundering case, not a case of aiding and abetting a specific act of manufacturing or distributing controlled substances.

Acty's Judgment at 5. We find no error with the district court's decision. As a matter of law, the circumstances of Acty's

---

**9.** The government argues that we should follow the First Circuit's decision in *United States v. Rodriguez*, 938 F.2d 319, 322 (1st Cir.1991), where the court held that a sentence below a statute's minimum was subject to a plain error review, despite the failure of the government to make a contemporaneous objection, because the "imposition of a term of imprisonment less than the minimum mandated by Congress affects 'substantial rights'" under Fed.R.Crim.P. 52(b). *Id.* at 322. *Rodriguez*, of course, does not control our decision and *Rodriguez* is distinguishable from Acty's case. In *Rodriguez*, the First Circuit noted that the district court concluded the sentencing hearing without according the government an opportunity to object. *Id.* at 321 n. 3.

aiding and abetting conduct are sufficiently unusual in degree—if not in kind—to warrant a departure. Acty's *only* involvement in the manufacture and distribution of cocaine, for example, was as a seller of diluent; there was no evidence that Acty participated in the manufacture or distribution in any other way. The district court also seemed to be of the opinion that Acty's sale of cocaine diluent was more in the nature of her business—that is, selling drug paraphernalia—and less in the nature of manufacturing and distributing cocaine. We are reluctant to disagree. Moreover, we believe that Acty's prison sentence of 108 months for aiding and abetting is reasonable—if not more than reasonable—for her crime.

## III. CONCLUSION

For the reasons stated, 21 U.S.C. § 857 is constitutional and Acty's convictions and sentences are affirmed.