**UNITED STATES of America, Appellee,**

v.

**Akhil MISHRA d/b/a Hari's Karishma, Appellant.**

**No. 91–3874.**

United States Court of Appeals, Third Circuit.

Argued June 19, 1992.

Decided Oct. 29, 1992.

---

Paul J. Brysh, Michael L. Ivory (argued), Office of U.S. Atty., Pittsburgh, Pa., for appellee.

J. Richard Narvin (argued), Pittsburgh, Pa., for appellant.

Before: GREENBERG and NYGAARD, Circuit Judges and POLLAK, District Judge *.

* Honorable Louis H. Pollak, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

## OPINION OF THE COURT

LOUIS H. POLLAK, District Judge.

### I.

Appellant Akhil Mishra pled guilty to a twelve-count indictment charging violations of the Drug Paraphernalia Act, 21 U.S.C. § 863. The plea of guilty was conditional upon a reservation by Mishra of his entitlement to challenge the constitutionality of the provision under which he was charged—a provision that makes it illegal for any person to sell or offer for sale any item of "drug paraphernalia." Mishra contends that the challenged statutory provision is unconstitutional in two respects. First, he argues that the term "drug paraphernalia" is unconstitutionally vague, failing to provide proper notice to the general citizenry and to law enforcement officers of just what conduct is prohibited. Second, Mishra claims that the prohibition on selling or offering for sale "drug paraphernalia" is unconstitutional because it lacks a scienter requirement, thus depriving criminal defendants of due process.

Finding that the challenged provision of the Drug Paraphernalia Act does contain a scienter requirement, and is not unduly vague, we conclude that it is not unconstitutional.

### II.

Appellant Mishra owned and operated three stores in downtown Pittsburgh: Novelties International/Impulse, Hari's Karishma, and Giggles. In May and June 1991, agents from the United States Customs Service and the United States Postal Inspection Service, as well as officers from the Pittsburgh Police Department, monitored appellant's stores, suspecting that he sold or offered for sale items considered to be drug paraphernalia under 21 U.S.C. § 863. The agents and officers made three undercover purchases of the alleged drug paraphernalia during the course of their surveillance.

Based on their observations and purchases, the government obtained a search warrant for each of Mishra's stores. The officers seized a number of items found in the search including: pipes of various sizes and materials, pipe screens of different sizes and shapes, crack pipes, inositol, mannitol, boxes of feathered roach clips, water pipes and bongs, rolling papers and wired rolling papers, and several scales. Mishra concedes that these items were on his premises and were offered for sale.

On June 25, 1991—shortly after the searches and seizures—a grand jury in the Western District of Pennsylvania returned an indictment charging Mishra with twelve counts of violating 21 U.S.C. § 863. Some of the counts charged Mishra with offering drug paraphernalia for sale and with actually selling such paraphernalia; other counts simply charged Mishra with offering such paraphernalia for sale.[1] On September 30, 1991, he entered a conditional guilty plea to all twelve counts. Based on Mishra's guilty plea, the district court sentenced appellant on November 27, 1991 to two years probation and fined him $4,000.

Having reserved his right to challenge the constitutionality of the statute under which he pled guilty, Mishra has appealed from his conviction and sentence. He claims that the Drug Paraphernalia Act is unconstitutionally vague in that it fails to provide adequate notice, either to ordinary citizens or to law enforcement officers, of the conduct prohibited by the statute. In addition, Mishra argues that the law lacks a scienter requirement, turning the statute into an unconstitutional criminal strict liability law. The government responds that the statute is not unconstitutionally vague, and that it contains an objective scienter requirement.

First, we will examine the text and context of the Drug Paraphernalia Act. Then, we will address appellant's twin challenges to the constitutionality of the Act.

### III.

#### A. Legislative Background

The earliest antecedent of the Drug Paraphernalia Act was the Model Drug Paraphernalia Act. Developed by the Drug Enforcement Agency of the Justice Department in 1979, the Model Act was designed to be a guide to states in their efforts to control the drug paraphernalia trade, and was eventually adopted in some form in thirty-eight states and the District of Columbia. The Model Act made it "unlawful

---

1. The record contains relatively little information about most of the seized items. As will be discussed more fully in part III of this opinion, 21 U.S.C. § 863(d) defines "drug paraphernalia" as "any equipment, product or material of any kind which is primarily intended or designed for use" with illegal drugs. It is our sense that some of the seized items might be regarded as, in the language of the statute, "primarily ... designed for use," § 863(d), with drugs, while others would be so-called "dual purpose" items, i.e., items that could be used with drugs but would also have entirely legitimate uses.

A "bong"—described by the Oxford English Dictionary (Second Edition 1989) 387 as "[a] kind of water-pipe used for smoking marijuana"—may well be an example of an item "primarily ... designed for use" with drugs. *United States v. Dyer*, 750 F.Supp. 1278, 1285 n. 12 (E.D.Va.1990). The *Dyer* court referred to testimony before a congressional committee tending to show that a "bong" is, as the *Dyer* court put it, "hard core paraphernalia by virtue of its physical features. The particular features of a 'bong' dictate that is has no alternative uses that are not highly contrived (e.g., filling it with water and adding flowers)." *Id.*

On the other hand, an example of a dual purpose item would be a pipe which could be used with drugs but which could also be used with tobacco. Another example of a dual purpose item would be inositol. The dictionary defines inositol as "an optically inactive alcohol that is a component of the vitamin B complex and is a lipotropic agent, that occurs widely in plants, ... in micro-organisms, and in higher animals and man...." *Webster's Third New International Dictionary*, 1167 (1966). However, inositol is also a common cocaine-cutting ingredient, according to the colloquy between the district court and Mishra in this case. Appellant's Brief and Appendix 57a. It would seem that dual purpose items may, under the statutory scheme, be shown to be "drug paraphernalia" if the government can establish that they are "primarily intended," within the meaning of § 863(d), for use with drugs.

Some elaboration of the distinction between "primarily ... designed" and "primarily intended" for use with drugs may be found in the discussion of scienter in part III.B., *infra*.

for any person to deliver, possess with intent to deliver, or manufacture with intent to deliver, drug paraphernalia, knowing or under circumstances where one reasonably should know, that it will be used" in connection with illegal substances. Under the Model Act, the term "drug paraphernalia" was defined as items "used, intended for use, or designed for use" with illegal drugs.

Adopting language similar to the Model Act, (but not including "knowing or under circumstances where one reasonably should know, that it will be used," or words of like import), Congress addressed the drug paraphernalia trade at the federal level through enactment of the Mail Order Drug Paraphernalia Control Act, 21 U.S.C. § 857. Taking effect in 1987, § 857 regulated the interstate sale of drug paraphernalia, and in particular was intended to combat the use of the mails to sell drug paraphernalia.[2] Section 857(a) made it unlawful (1) "to make use of the services of the Postal Service or other interstate conveyance as part of a scheme to sell drug paraphernalia;" (2) "to offer for sale and transportation in interstate or foreign commerce drug paraphernalia;" or (3) "to import or export drug paraphernalia."

In 1990, § 857 was repealed and replaced by the current Drug Paraphernalia Act, 21 U.S.C. § 863. Section 863 is identical to § 857 in all but its description of the underlying offense. In addition to making it unlawful to "use the mails or any other facility of interstate commerce to transport drug paraphernalia"[3] and to "import or export drug paraphernalia," § 863(a) broadens the scope of § 857 by making it unlawful simply "to sell or offer for sale drug paraphernalia."[4]

Sections 857 and 863 are indistinguishable in all other respects. Since the definitional provisions of § 857 and § 863 have generated substantial case law, we will lay out the definitional sections in detail:[5]

Section 857(d), transposed verbatim in § 863(d), defines "drug paraphernalia" as follows:

(d) The term "drug paraphernalia" means any equipment, product, or material of any kind which is primarily intended or designed for use in manufacturing, ... preparing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance, possession of which is unlawful under this subchapter. It includes items primarily intended or designed for use in ingesting, inhaling, or otherwise introducing marijuana, cocaine, hashish, hashish oil, PCP, or amphetamines into the human body, such as—

(1) metal, wooden, acrylic, glass, stone, plastic, or ceramic pipes with or without screens, permanent screens, hashish heads, or punctured metal bowls;

(2) water pipes;

(3) carburetion tubes and devices;

(4) smoking and carburetion masks;

---

**2.** Explaining his support for the Mail Order Drug Paraphernalia Control Act, Representative Mel Levine stated:

> Paraphernalia dealers have moved to sell through the mails what they can no longer sell at the corner record store.... The creation of these mail order operations is a deliberate attempt to circumvent State and local law enforcement efforts to control the sale of paraphernalia and to reduce drug abuse.... This giant loophole in the law can't be handled on the State level, and it necessitates legislation.

*Mail Order Drug Paraphernalia Control Act: Hearings Before the Subcomm. on Crime of the House Committee of the Judiciary,* 99th Cong., 2d Sess. 16 (1986).

**3.** Section 863 no longer requires proof of a "scheme" to sell drug paraphernalia.

**4.** In explaining to his colleagues the reasons for repealing § 857 and replacing it with § 863, Senator Dan Coats stated:

> In the 1986 Anti–Drug Abuse Act, we took action against this perverse trade by outlawing the interstate sale, import and export of drug paraphernalia.... What I seek to do in this bill is outlaw the business completely.

135 Cong.Rec. S14,680–01 (daily ed. Friday, November 3, 1989).

**5.** Given § 863's recent passage into law, there are fewer cases concerning it than § 857. However, for purposes of this opinion, cases construing the definitional provisions of § 857 and § 863 will be used interchangeably since they address identical statutory language.

(5) roach clips: meaning objects used to hold burning material, such as a marihuana cigarette, that has become too small or too short to be held in the hand;

(6) miniature spoons with level capacities of one-tenth cubic centimeter or less;

(7) chamber pipes;

(8) carburetor pipes;

(9) electric pipes;

(10) air-driven pipes;

(11) chillums;

(12) bongs;

(13) ice pipes or chillers;

(14) wired cigarette papers; or

(15) cocaine freebase kits.

Further, § 857(e) and § 863(e) specify certain "matters [to be] considered in determination of what constitutes drug paraphernalia:"

(e) In determining whether an item constitutes drug paraphernalia, in addition to all other logically relevant factors, the following may be considered:

(1) instructions, oral or written, provided with the item concerning its use;

(2) descriptive materials accompanying the item which explain or depict its use;

(3) national and local advertising concerning its use;

(4) the manner in which the item is displayed for sale;

(5) whether the owner, or anyone in control of the item, is a legitimate supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products;

(6) direct or circumstantial evidence of the ratio of sales of the item(s) to the total sales of the business enterprise;

(7) the existence and scope of legitimate uses of the item in the community;

(8) expert testimony concerning its use.

Finally, § 857(f), which today is § 863(f), identifies certain exclusions:

(f) This section shall not apply to—

(1) any person authorized by local, State, or Federal law to manufacture, possess, or distribute such items; or

(2) any item that, in the normal lawful course of business, is imported, exported, transported, or sold through the mail or by any other means, and traditionally intended for use with tobacco products, including any pipe, paper or accessory.

### B. Scienter

■ Each of the twelve counts to which Mishra pled guilty charged that he "did knowingly, intentionally, and unlawfully sell and offer for sale drug paraphernalia, as that term is defined in Title 21, United States Code, Section 863(d)" or that he "did knowingly, intentionally, and unlawfully offer for sale drug paraphernalia, as that term is defined in Title 21, United States Code, § 863(d)." [6] Notwithstanding that each of the twelve counts charges that Mishra acted "knowingly, intentionally," Mishra contends that § 863 contains no scienter ingredient, and hence, in undertaking to impose strict *criminal* liability, works a denial of due process.

In addressing this contention, we note at the outset that we think it not self-evident that, if § 863 lacks a scienter requirement, the statute would therefore necessarily be unconstitutional. It is of course a traditional feature of Anglo–American law that criminal liability does not attach without a showing that the accused's bad conduct was advertent. *Morissette v. United States*, 342 U.S. 246, 250–52, 260–61, 72 S.Ct. 240, 243–44, 248–49, 96 L.Ed. 288 (1952). But in the course of this century, criminal law has broadened its scope to include not only offenses regarded as *"mala in se," United States v. Balint*, 258 U.S. 250, 252, 42 S.Ct. 301, 302, 66 L.Ed.

---

**6.** As mentioned, § 863(d) defines "drug paraphernalia" as "any equipment, product, or material of any kind which is primarily intended or designed for use" in connection with illegal drugs—i.e., "primarily intended or designed for use in manufacturing ... concealing ... injecting, ingesting, inhaling or otherwise introducing into the human body a controlled substance, possession of which is unlawful under this subchapter."

604 (1922), but also breaches of "regulatory measures in the exercise of ... the police power." *Id.* Such breaches commonly entail penalties more modest than those conventional for major crimes. With respect to offenses of this nature, the constitutional momentum calling for a showing of intentionality is weaker. *Morissette,* 342 U.S. at 252–60, 72 S.Ct. at 244–48.

Accordingly, this court has had occasion to sustain, against a due process challenge, a federal criminal statute with a moderate penalty scheme similar to that contemplated by § 863 [7] and which we found not to require proof of scienter. In *United States v. Engler,* 806 F.2d 425 (3d Cir. 1986), the Migratory Bird Treaty Act was construed not to require scienter on the part of one charged with the sale of migratory birds or bird parts in violation of the authorizing statute. Judge Aldisert wrote:

> Strict liability for omissions which are not *"per se* blameworthy" may violate due process because such derelictions are " 'unlike the commission of acts, or the failure to act under circumstances that should alert the doer to the consequences of his deed.' " [*United States v. Freed,* 401 U.S. 601, 608, 91 S.Ct. 1112, 1118, 28 L.Ed.2d 356 (1971) (quoting *Lambert v. California,* 355 U.S. 225, 228, 78 S.Ct. 240, 242, 2 L.Ed.2d 228 (1957) (law imposing strict criminal liability on convicted felons who fail to register when remaining in Los Angeles for more than five days violates due process). By contrast, due process is not violated by the imposition of strict liability as part of "a regulatory measure in the interest of public safety, which may well be premised on the theory that one would hardly be surprised to learn that [the prohibited conduct] is not an innocent act." 401 U.S. at 609 (citing *United States v. Dotterweich,* [320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943)] (shipping adulterated and misbranded drugs) and *United States v.*

*Balint,* [258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604 (1922)] (selling narcotics.

*Engler,* 806 F.2d at 435.

Thus, we have serious doubts about the correctness of Mishra's syllogism that the absence of a scienter requirement would doom § 863. But, more importantly, we are not persuaded by the syllogism's premise that § 863 lacks a scienter element. Several courts have considered the argument that § 863, or its verbatim predecessor, § 857, does not incorporate a requirement of scienter. Insofar as we have been able to determine, the contention has been rejected in all but two instances. The district court in Utah appears to have accepted the argument but filed no explanatory opinion. *United States v. Murphy,* 91–NCR–61G, Order of Dismissal (D.Utah Jan. 7, 1992). Judge Sweet, in the Southern District of New York, noting that the language of intentionality that appeared in the Model Act was not included in § 857, reasoned that this omission reflected a congressional decision in favor of strict liability. *United States v. Schneiderman,* 777 F.Supp. 258 (S.D.N.Y.1991). However, the Second Circuit recently rejected that analysis. *United States v. Schneiderman,* 968 F.2d 1564 (2d Cir.1992). The Second Circuit's conclusion, with which we agree, is as follows:

> "Certainly far more than the simple omission of the appropriate phrase from the statutory definition is necessary to justify dispensing with an intent requirement." *United States v. Gypsum Co.,* 438 U.S. 422, 438 [98 S.Ct. 2864, 2874, 57 L.Ed.2d 854] (1978).... We believe that Congress intended to include an intent provision in § 857. The key language is contained in subsection § 857(d), which describes "drug paraphernalia" to include only those items "primarily intended or designed for use" with illegal drugs. This phrase serves two purposes: it circumscribes the category of items a defendant may be punished for distribut-

---

**7.** 21 U.S.C. § 863(b) authorizes imprisonment for no more than three years plus a fine pursu-

ant to the general fine structure of Title 18.

ing, and it also strongly implies that some mental state is required. *Schneiderman,* 968 F.2d at 1566.[8]

Having determined that § 863 requires the government to prove beyond a reasonable doubt some measure of deliberation by defendant, we now examine what sort of deliberation must be proved.

In our view, the deliberation called for by § 863 impinges at two points. First, when a person is charged with "sell[ing] or offer[ing] for sale drug paraphernalia," the government must show that the selling or offering for sale was intentional conduct. *Cf. Dyer,* 750 F.Supp. at 1283 n. 6. Thus, in a prosecution such as that of Mishra, the factfinder presumably could infer the defendant's intent to sell from the fact that the items alleged to be drug paraphernalia were purchased at, or were part of the inventory observed in, the defendant's store. The second aspect of scienter that the government would have to establish beyond a reasonable doubt inheres in the statutory definition of drug paraphernalia, i.e., items "primarily intended or designed for use" in connection with illegal drugs.

Under § 863(d), the government may demonstrate that an item is drug paraphernalia in two ways: either by showing that an item is "primarily intended" for use with drugs or by showing that an item is "primarily ... designed" for use with drugs.[9]

In order to show that an item is "primarily intended" for drug use, the government would need to establish that the defendant seller contemplated, or reasonably expected under the circumstances, that the item sold or offered for sale would be used with illegal drugs.[10] In rare instances the government might be able to show this through an admission by the defendant. More commonly, the government would have to produce evidence from which the jury could infer the defendant's expectation. Such evidence might include the manner in which the item was displayed, how it was advertised, expert testimony concerning the use of the item, or any of the other factors listed in § 863(e) which the statute suggests should be considered.[11] For example, the Court in *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 502, 102 S.Ct. 1186,

---

**8.** Other decisions rejecting the contention that the statute does not require scienter include: *United States v. Posters 'N' Things Ltd.,* 969 F.2d 652, 657 (8th Cir.1992) (§ 857 contains objective scienter requirement); *United States v. 57,261 Items of Drug Paraphernalia,* 869 F.2d 955, 957 (6th Cir.1989) (§ 857 makes defendant's intent relevant); *United States v. 3520 Brighton Boulevard,* 785 F.Supp. 141, 143 (D.Colo.1992) (no doubt Congress intended § 863 to have a mens rea element); *United States v. Dyer,* 750 F.Supp. 1278, 1284 (E.D.Va.1990) (§ 857 incorporates objective scienter requirement); *U.S. v. Main Street Distributing Inc.,* 700 F.Supp. 655, 663 (E.D.N.Y.1988) ("neither the language of § 857 nor its legislative history supports defendant's argument that scienter was deliberately omitted from the statute.").

**9.** In construing § 857 or § 863, many courts have struggled with the question whether the scienter requirement contemplated by the statute is "subjective" or "objective." The courts are split: some have found the scienter element to be "subjective," *see Schneiderman,* 968 F.2d at 1567; *57,261 Items of Drug Paraphernalia,* 869 F.2d at 957; *3520 Brighton Boulevard,* 785 F.Supp. at 143; *Main Street Distributing,* 700 F.Supp. at 666; and others have deemed the scienter element "objective," *see Posters 'N' Things Ltd.,* 969 F.2d at 657; *Dyer,* 750 F.Supp.

at 1293. The division of authority suggests that the "subjective"/"objective" terminology is not of much assistance in giving content to the statutory language. In large part, this is because § 863 and § 857, like many criminal statutes, seem to have both subjective and objective aspects.

**10.** Several courts have held—and we agree—that the only relevant intent in § 863 is that of the defendant seller, not that of the non-defendant manufacturer or intermediate distributor. *See Schneiderman,* 968 F.2d at 1567 (defendant's intent is the relevant intent) (citing *57,261 Items of Drug Paraphernalia,* 869 F.2d at 957; *3520 Brighton Boulevard,* 785 F.Supp. at 143; *Main Street Distributing Inc.,* 700 F.Supp. at 666). *See also Mail Order Drug Paraphernalia Control Act: Hearings Before the Subcomm. on Crime of the House Committee of the Judiciary,* 99th Cong.2d Sess. 19–21, 46 (including statements of Congressmen Mel Levine and Bill McCollum that the intent of the particular defendant on trial is the relevant intent).

**11.** For the text of § 863(e), see *supra* pp. 304–05. The factors outlined in § 863(e) are not intended to be exhaustive but recommended considerations "in addition to all other logically relevant factors."

1195, 71 L.Ed.2d 362 (1982), addressing a local drug paraphernalia licensing statute similar to § 863, found that proof that an item was "marketed for" drug use established the intent of the defendant retail seller "since a retailer could scarcely 'market' items 'for' a particular use without intending that use".[12]

The government may also show scienter by presenting evidence that items are "primarily ... designed for" use with illegal drugs. The "designed for" inquiry focuses on the "physical characteristics and design features of the items."[13] *Dyer,* 750 F.Supp. at 1285. Where the "illicit purpose of the manufacturer or designer is embodied in the object itself, that purpose is apparent to all who perceive the object. 'All that is required is for persons to open their eyes to the 'objective realities' of the items sold in their businesses.' " *Id.* (quoting *Garner v. White,* 726 F.2d 1274, 1282 n. 8 (8th Cir.1984) (quoting *The Casbah Inc. v. Thone,* 651 F.2d 551, 561 (8th Cir. 1981), *cert. denied,* 455 U.S. 1005, 102 S.Ct. 1642, 71 L.Ed.2d 874 (1982))).

An item "primarily ... designed for" use with drugs is an object without any apparent legitimate purpose—for example, a bong. *Dyer,* 750 F.Supp. at 1285 n. 12 (see *supra* note 1). Proof that an item is "primarily ... designed for" use with drugs constitutes persuasive evidence of a defendant seller's expectation that the item offered for sale would be used with illegal drugs. The government, therefore, can establish scienter with respect to the sale or offer for sale of a "designed for" item by demonstrating merely that the defendant seller was aware of the general nature of the item [14]—i.e., that the defendant knew that the item sold or offered for sale is generally known to be used with illegal drugs. Such knowledge on the part of the defendant may be inferred by the jury from extrinsic factors such as those listed in § 863(e).[15]

## C. Vagueness

Appellant also contends that § 863 "is void on its face and therefore not applicable to ... Defendant or enforceable under any circumstances." Appellant's Brief at 2.

Where protected conduct is not at issue,[16] a court must reject a challenge of

---

**12.** *See also United States v. Tobacco Emporium, Inc.,* 1992 WL 80624, *4, 1992 U.S.Dist. LEXIS 4895, *10 (M.D.Fla.1992). Noting that the factors listed in § 857(e) may constitute evidence of the retailer's intent, the court stated:

> Section 857(e)(4) analyzes 'the manner in which the items [sic] is displayed for sale' ... [M]irrors, razor blades and miniature ziplock bags all have legal uses. However, when they are displayed together in a store such as the Tobacco Emporium, it becomes apparent that they are primarily intended to be used with cocaine.

*Id.* 1992 WL 80624 at *4, at *10–*11.

**13.** *See, e.g. Hoffman Estates,* 455 U.S. at 491, 102 S.Ct. at 1189–90; *Posters 'N' Things,* 969 F.2d at 657; *Schneiderman,* 968 F.2d at 1567; *Dyer,* 750 F.Supp. at 1284–85.

**14.** This standard is not unlike that approved by the Court in *Hamling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974). In *Hamling,* the Court sustained 18 U.S.C. § 1461, prohibiting the mailing of obscene materials, finding that the statute did not require the government to prove the defendant's "knowledge of the legal status of the materials." *Id.* at 123, 94 S.Ct. at 2911. Rather, the prosecution needed to demonstrate only that the defendant was aware of the "contents of the materials he distributed, and that he knew the character and nature of the materials." *Id.*

**15.** While the processes of showing scienter under the "designed for" and "intended for" approaches are similar, in that both may call for reference to the § 863(e) factors in order to establish scienter, the government's task in establishing the defendant seller's intent is easier under the "designed for" standard than the "intended for" standard. For example, the quantum of evidence required to convince a jury that a defendant was cognizant of the general nature of a bong (for which there would seem to be no likely legitimate use, see *supra* note 1) sold in the defendant's own store would probably be less than the quantum of evidence necessary to establish that a defendant who sold a dual purpose item—an item such as a pipe that has both legitimate and illegitimate uses, see *supra* note 1—anticipated that the item would be employed for an illegitimate rather than a legitimate purpose.

**16.** Appellant remarks in his brief that the statute is overbroad, suggesting that § 863 violates his substantive due process rights. Appellant does not pursue the point, nor does the point seem worth pursuing: "a retailer's right to sell smoking accessories, and a purchaser's right to buy

facial vagueness unless the defendant "demonstrate[s] that the law is impermissibly vague in all of its applications." *Hoffman Estates*, 455 U.S. at 497, 102 S.Ct. at 1193.[17]

Section 863 is not impermissibly vague in all of its applications. The statute unambiguously applies to any of the fifteen items listed in § 863(d) which is shown to be "primarily intended or designed for use" with drugs and which is not covered by one of the two exceptions in § 863(f).[18] The list of fifteen items of drug paraphernalia, together with the eight § 863(e) specific factors to consider and the two § 863(f) exceptions provide the statute with a core of prohibited conduct. *See Posters 'N' Things*, 969 F.2d 652; *Dyer*, 750 F.Supp. at 1295. Moreover, our finding of scienter helps to cure a law's vagueness. *Hoffman Estates*, 455 U.S. at 499, 102 S.Ct. at 1193. The "interaction of definition and intent allays vagueness." *Levas and Levas v. Village of Antioch Il.*, 684 F.2d 446, 453.[19]

Because many drug paraphernalia items are dual purpose objects, susceptible both to legitimate and illegitimate uses,[20] a certain degree of ambiguity necessarily surrounds their classification. Mishra argues that this ambiguity evidences the statute's failure to give adequate notice to the retailer. Mishra asks a greater degree of clarity than the Constitution mandates:

Whenever the law draws a line there will be cases very near each other on opposite sides. The precise course of the line may be uncertain, but no one can come near it without knowing that he does so, if he thinks, and if he does so it is familiar to the criminal law to make him take the risk.

*United States v. Wurzbach*, 280 U.S. 396, 399, 50 S.Ct. 167, 169, 74 L.Ed. 508 (1930) (quoted in *Hamling v. United States*, 418 U.S. 87, 124, 94 S.Ct. 2887, 2911, 41 L.Ed.2d 590 (1974). "[D]espite fringe areas of uncertainty, [§ 863], as a whole, provides fair warning of prescribed conduct," and is not unconstitutionally vague. *3520 Brighton Boulevard*, 785 F.Supp. at 144.

### IV.

On the basis of the language and structure of § 863, we construe it to require proof of scienter. And we find that the statute, so construed, is not facially vague.

The judges constituting this panel are unanimous with respect to the construction and constitutionality of § 863, but we are not unanimous with respect to the proper disposition of Mishra's appeal. For the reasons set forth in footnote 21, Judges Greenberg and Nygaard conclude that the proper course is to affirm Mishra's conviction.[21] For the reasons set forth in foot-

and use them, are entitled only to minimal due process protection." *Hoffman Estates*, 455 U.S. at 497 n. 7, 102 S.Ct. at 1191 n. 7.

17. One challenging a statute on vagueness grounds must show that the statute is vague "not in the sense that 'it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." *Coates v. City of Cincinnati*, 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971). Where this is the case, the statute has no core. *Hoffman Estates*, 455 U.S. at 495 n. 7, 102 S.Ct. at 1191 n. 7.

18. We find no merit in appellant's argument that the use of the modifier "primarily" renders the statute vague. *See Main Street Distributing Inc.*, 700 F.Supp. at 667 (citing *Garner v. White*, 726 F.2d 1274, 1281 (8th Cir.1984), *Nova Records, Inc. v. Sendak*, 706 F.2d 782, 789 (7th Cir.1983), and *Hejira Corp. v. J.D. MacFarlane*, 660 F.2d 1356, 1365 (10th Cir.1981).

19. Mishra also contends that the ambiguity in the statute tends to encourage arbitrary enforcement. *Cf. Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972) (holding that a statute is unconstitutionally vague if it encourages arbitrary enforcement). Courts addressing this contention in the context of § 857 and § 863 have uniformly found it insubstantial. *See, e.g., Schneiderman*, 968 F.2d 1564; *3520 Brighton Boulevard*, 785 F.Supp. at 144; *Dyer*, 750 F.Supp. at 1296–97; *Main Street Distributing, Inc.*, 700 F.Supp. at 667–668 (citing *Hejira*, 660 F.2d at 1367).

20. *See supra* notes 1 and 15.

21. When Mishra entered his plea of guilty to selling and offering drug paraphernalia for sale "knowingly, intentionally, and unlawfully," he reserved the right to challenge the constitutionality of the Drug Paraphernalia Act. Accordingly, if we had concluded that his constitutional contention was correct, the final sentence of Fed.R.Crim.P. 11(a)(2), which provides that: "A

310

note 22, the writer of this opinion would vacate Mishra's conviction and remand for further proceedings.[22]

Accordingly, Mishra's conviction is affirmed.

defendant who prevails on appeal shall be allowed to withdraw the plea" now would be applicable. But as we have upheld the Act he has no right to withdraw his plea. Thus, we should simply affirm.

Rule 11(a)(2) cannot be circumvented on a theory that Mishra may have been surprised by our result, for the question of whether the statute requires scienter has been a central issue in this case. Thus, if Mishra wanted to condition his plea so that he could withdraw it if we construed the statute as we have, he should have done so. Furthermore, even in Mishra's brief on this appeal he does not ask that he be allowed to withdraw his plea if we find that the Drug Paraphernalia Act contains a scienter requirement. Rather, he asks to be "discharged." Thus, if we vacate his plea, we will grant Mishra

relief which he did not seek in the district court and does not seek from us.

Of course, we do not necessarily suggest that Mishra is foreclosed from seeking leave to vacate his plea from the district court under 28 U.S.C. § 2255 or perhaps some other procedure. While we express no view on the question of whether Mishra can obtain such relief, we think it fair to say that we are not barring it.

22. Since there is no reason to suppose that the district court, in accepting Mishra's guilty plea, anticipated the particular construction of 21 U.S.C. § 863 and the concomitant modes of proof set forth in the court's opinion, it would seem that, rather than affirm Mishra's conviction, the better course would be to vacate the conviction and remand for further proceedings consistent with part III(B) of this opinion.