**UNITED STATES of America, Appellant,**

v.

**James SIMPSON, Appellee.**

**No. 93–1958.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 14, 1993.

Decided Oct. 22, 1993.

Joseph M. Landolt, Asst. U.S. Atty., St. Louis, MO, argued, for appellant.

Jane C. Hogan, St. Louis, MO, argued, for appellee.

Before MAGILL, Circuit Judge, LAY and BRIGHT, Senior Circuit Judges.

BRIGHT, Senior Circuit Judge.

The United States challenges the district court's downward departure from the Sentencing Guidelines' sentencing range attributed to defendant James Simpson. Simpson's convictions include four counts of distribution of cocaine in violation of 21 U.S.C. § 841(a)(1), and three counts of food stamp fraud in violation of 7 U.S.C. § 2024(b). On review, we reverse, vacate and remand for resentencing with directions.

## Background

Simpson pled guilty to all counts in the indictment. The Presentence Report (PSR) determined the base offense level at 22, with a three-level reduction for acceptance of responsibility. With a total offense level of 19 and a criminal history category of I, the applicable guideline range equaled 30–37 months. Notwithstanding the PSR, the district court sentenced Simpson to twelve months imprisonment, six to be satisfied by six months imprisonment in a jail-type institution with work release. The court ordered the sentences to run concurrently. Following release from imprisonment, the sentence required that Simpson remain on supervised release for two years. The district court also ordered a special assessment in the amount of $50.00 per count, or $350.00 to be paid within one year of his sentence. We remand for further proceedings consistent with the directives that follow.

## I.

Since November 1991, the Bureau of Alcohol, Tobacco and Firearms (ATF) unsuccessfully tried to purchase military weapons from Simpson. On January 23, 1992, an ATF agent, accompanied by a confidential informant, arranged to purchase cocaine with Simpson's assistance. Beginning January 23, and continuing on January 31, February 13 and February 20, the ATF agent purchased cocaine from Simpson. The agent, acting solely on his own volition, bought the drugs using food stamps. The amount of cocaine sold included, respectively, 9.92 grams, 35.60 grams, 35.78 grams and 278.94 grams. On each occasion but the last, when law enforcement authorities arrested Simpson, the ATF agent paid for the cocaine with food stamps in amounts equivalent to, respectively, $2,000.00, $4,505.00 and $4,530.00, for a total cash value of $11,035.00. Simpson also received $235.00 cash for arranging the cocaine transactions.

Until participating in the charged cocaine distribution and food stamp fraud, Simpson had not been arrested for or charged with any criminal activity. At the time the offense occurred, Simpson was twenty-eight years of age, married, the father of two children, and step-father to his wife's two children from a previous relationship. Simpson had completed high school, and had attended college on a periodic basis. The PSR revealed that Simpson's drug use began in high school. Marijuana use escalated into cocaine use and addiction after Simpson entered college. By the time he engaged in the criminal conduct underlying the convictions, Simpson's addiction to cocaine controlled his life.

On June 1, 1992, Simpson changed his not guilty plea to a plea of guilty. The district court scheduled sentencing for August 21. Simpson remained free on bond. The district court repeatedly rescheduled the sentencing hearing. Throughout that period Simpson failed to comply with a number of the district court's orders to report for urine "drops." On those occasions that Simpson did comply, he tested positive for the use of various drugs, including cocaine, codeine, morphine, methadone and marijuana. Ultimately the district court revoked Simpson's bond, submitting him to "shock incarceration." Thereafter Simpson obtained employment, assisted in his family's support and no longer used cocaine.

The PSR stated an applicable guideline range of 30–37 months, based upon a total offense level of 19, including a three-level deduction pursuant to U.S.S.G. § 3E1.1 for acceptance of responsibility. Simpson's Criminal History Category I resulted from an absence of prior convictions. As set forth in the PSR, the combined adjusted offense level totaled 22, derived from an adjusted

offense level of 22 for violation of 21 U.S.C. § 841(a)(1), Distribution of Cocaine, and an adjusted offense level of 11 for violation of 7 U.S.C. § 2024(b), Unauthorized Acquisition and Possession of Food Stamp Coupons.

The sentencing hearing took place on March 19, 1993. The district court departed downward from the guideline range, citing the following circumstances: defendant's first-time offender status, present employment and financial support of his family, defendant's serious addiction to cocaine during the period for which the conduct giving rise to the convictions occurred, the short time frame that the offenses took place, the government's initiating role in the use of the food stamps and defendant's efforts at recovering from his cocaine addiction.

## II.

The United States argues on appeal that the district court erroneously departed downward from the guideline range attributed to Simpson. According to the Government, none of the factors relied upon constitute a valid mitigating circumstance permitting downward departure.

Title 18, section 3553 specifies the factors a district court *must* consider in imposing a sentence. Subsection (a) of that section provides:

(a) FACTORS TO BE CONSIDERED IN IMPOSING A SENTENCE.—*The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection.* The court, in determining the particular sentence to be imposed, shall consider—

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines that are issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(1) and that are in effect on the date the defendant is sentenced;

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(2) that is in effect on the date the defendant is sentenced;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

(emphasis added).

Congress intended that application of the Sentencing Guidelines effectuate, in varying degrees, the four purposes of sentencing set forth in § 3553(a)(2), including retribution, deterrence, protection of the public and rehabilitation. S.Rep. No. 225, 98th Cong., 2d Sess. 74–76, *reprinted in* 1984 U.S.C.C.A.N. 3182, 3257–59 (Legislative History). *See also* U.S.S.G. Ch. 1, Pt. A, intro. 1. To accomplish this result, a sentencing court "may consider, *without limitation,* any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law." U.S.S.G. § 1B1.4 (emphasis added). *See also* 18 U.S.C. § 3661.

Section 3582 of title 18, pertaining to the imposition of a prison sentence, references determination of the length of imprisonment similarly to the factors set forth in § 3553(a). Congress has expressly recognized that "imprisonment is not an appropriate means of promoting ... rehabilitation." 18 U.S.C. § 3582(a). Rehabilitation, however, remains a valid consideration under the Sentencing Guidelines. 1984 U.S.C.C.A.N. at 3259.

Consistent with the above principles, the district court's imposed sentence may permissively depart from the applicable guideline range, pursuant to 18 U.S.C. § 3553(b). That subsection provides for departure upon a finding of "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." The Commission made clear that in an atypical case, "one to which a particular guideline linguistically applies but where conduct significantly differs from the norm," the sentencing court may consider whether to grant a departure. U.S.S.G. Ch. 1, Pt. A, intro., 4(b). *See also* 28 U.S.C. § 991(b)(1)(B) (in attaining its purposes, the Sentencing Commission is to maintain "sufficient flexibility to permit individualized sentences when warranted by mitigating or aggravating factors not taken into account in the establishment of general sentencing practices").

The listed grounds for departure are not exhaustive. In addition, even when the Commission considered the factors raised as the basis for departure, the district court can depart from the guidelines "if the court determines that, in light of unusual circumstances, the guideline level attached to that factor is inadequate." U.S.S.G. § 5K2.0, p.s.

■ Deciding upon a sentence, both in form and length, and accordingly evaluating the availability of a guideline departure, requires consideration of the factors listed in § 3553(a), in light of the purposes of imposing a sentence, and consistent with the recognition that imprisonment does not further rehabilitation. *Accord United States v. Yellow Earrings*, 891 F.2d 650, 654 (8th Cir. 1989). *See, e.g.*, U.S.S.G. § 5C1.1, comment. (n. 6).[1]

### III.

The United States contends the district court unjustifiably invoked a downward departure because none of the factors relied upon presented conduct significantly different from the norm. Review of a guideline departure is, nonetheless, limited. Pursuant to 18 U.S.C. § 3742(f), the court of appeals must set aside the sentence and remand for resentencing only upon the determination that the sentence:

(1) was imposed in violation of law or imposed as a result of an incorrect application of the sentencing guidelines ...

(2) is outside the applicable guideline range and is unreasonable ...

Simpson received a sentence of twelve months imprisonment, to be satisfied by six months imprisonment in a jail-type institution with work release, and then followed by supervised release for a two-year period.[2]

---

1. Application note 6 of § 5C1.1 provides:
   There may be cases in which a departure from the guidelines by substitution of a longer period of community confinement than otherwise authorized for an equivalent number of months of imprisonment is warranted to accomplish a specific treatment purpose (*e.g.*, substitution of twelve months in an approved residential drug treatment program for twelve months of imprisonment). Such a substitution should be considered only in cases where the defendant's criminality is related to the treatment problem to be addressed and there is a reasonable likelihood that successful completion of the treatment program will eliminate that problem.

2. Though the Government failed to challenge the supervised release term imposed here, 21 U.S.C. § 841(b)(1)(C) provides the penalty range applicable to Simpson's distribution of 360.24 grams of cocaine. Subparagraph (C) states in relevant part:
   In the case of a controlled substance in schedule I or II except as provided in subpara-

graphs (A), (B), and (D), such person shall be sentenced to a term of imprisonment of not more than 20 years.... *Any sentence imposing a term of imprisonment under this paragraph shall, in the absence of such a prior conviction, impose a term of supervised release of at least 3 years in addition to such term of imprisonment....*
(emphasis added).
   Section 841(b)(1)(C) clearly mandates that Simpson, as a first-time offender, serve at least three years of supervised release after his discharge from prison. *Accord United States v. Kelly*, 974 F.2d 22, 24 (5th Cir.1992) (application of § 841(b)(1)(C) requires minimum supervised release term of three years; maximum permissible term also three years due to amount of drugs involved, implicating § 3583(b)(2)). *See also* U.S.S.G. § 5D1.2(a) (requiring that when a statute mandates a term of supervised release, the term shall be at least three years but not greater than five years, or the minimum required under the statute, whichever is greater). *Cf. United States v. LeMay*, 952 F.2d 995, 998 (8th Cir.1991)

■ We now address whether the departure resulted from an incorrect application of the sentencing guidelines. Use of an invalid ground for departure constitutes "an incorrect application" and requires remand if the sentence imposed results from using that invalid ground. *Williams v. United States,* —— U.S. ——, ———–——, 112 S.Ct. 1112, 1119–20, 117 L.Ed.2d 341 (1992). On this record, we cannot determine whether or not the district court actually relied upon an invalid ground for granting the departure. Because the issue of the applicability of those circumstances cited by the district court will likely recur on remand, we address each factor as it pertains to departure.

The district court, at the sentencing hearing, stated the following factors "required consideration" in deciding whether departure was warranted:

> First of all, it is very obvious that this defendant has had drug addictions.... I'm also impressed with the fact that these incidents [the criminal offenses] took place in a period of a couple of months.... The other thing that impresses me ... is ... that it was not [defendant's] original idea to ask for food stamps, but it was the—the ATF agent who suggested that he get food stamps.... The whole purpose is to have him continue his job.

Sent. Tr. at 11–13, 15. In addition, the district court's attached typewritten sheet to the Judgment provides as follows:

*Reasons for Departure for James Simpson*

The Court does depart from the Sentencing Guidelines, for these and other reasons:

The Court has sentenced defendant to 12 months incarceration with a special condition of probation that the prison term will be satisfied after service of six months in a jail-type institution.

1) This defendant is a 28–year[–]old son of a police officer, without any criminal record, who had become seriously addicted to cocaine. Before his addiction, he was a college senior who had an excellent chance for a promising athletic career as a basketball player. During the pendency of this case he has made remarkable efforts at recovery from his addiction, slowly at first, and then after a period of 'shock incarceration,' much more rapid improvement ocurred [sic]. He is now steadily employed in a minimum wage job and is supporting his family consisting of a wife and two [sic] children.

The Court notes that the three charges of illegal possession of food stamps, which were used as part payment for the cocaine, were really initiated by the Government agent and were not a part of the defendant's plans until the Government agent insisted upon their inclusion. It should be noted that the addicition [sic] was at its strongest at this time.

The Court believes that the strong efforts of this defendant to overcome his addicition [sic] and to seek professional treatment coupled with his prior good record, and further, considering the fact that the sales of cocaine were all very close in time, justifies departure from the Guidelines. The imposition of a jail sentence with work release will assure continued employment, while ssupervision [sic] by the Probation Office will militate against renewed drug usage.

Additionally, the district court at sentencing added:

> And if I'm only a rubber stamp for a set of tables here, then they can save a heck of a lot of money by getting somebody else to read the—the numbers off, or just let the prosecuting attorney make the determination and hand it to the clerk who will stamp it, and he does, and doesn't have anything to do with it, except to enter it. I think the Court still has some discretion. And I think the Court has to exercise, not only emotional feelings, but logical feelings toward the—a sense of justice that must follow in these cases.
>
> ....
>
> THE COURT: The whole purpose is to have him continue his job. That's why I'm

(rejecting contention that Sentencing Commission, in adopting § 5D1.2(a), had intent and power to eliminate the authority expressly conferred in drug abuse statute, § 841(b)(1)(A), to impose a supervised release term greater than five years).

going to all this elaborate length. I don't want him to lose his job. The job is the most important thing in a person's life. If you don't have [a] job all kinds of trouble is going to happen. If any one of us lost our jobs today it would change our whole life. Our whole life would be changed if we didn't have [a] job. And if we didn't find another job right away, I dare say there'd be problems for all of us including myself. So that's why I'm trying to do this. The most important thing is—there are two important things. You can't commit another crime. And that other crime would include using drugs. And secondly, you must keep a job.

Sent.Tr. at 11, 15–16.

### IV.

■ The PSR assigned Simpson a criminal history category of I. A Category I criminal history constitutes the lowest assignable level applicable to defendants with either no prior offense or only one prior offense. Inclusion of first-time offenders in that category indicates that the Sentencing Commission chose to treat first-time offenders at the same sentencing level for purposes of criminal history. *See* U.S.S.G. § 4A1.3, p.s. ("The lower limit of the range for Criminal History Category I is set for a first offender with the lowest risk of recidivism"). Because first-time offenders receive the benefit of U.S.S.G. § 4A1.3, departure from the guideline range on this basis alone is an incorrect application of the guidelines. *United States v. Franklin*, 926 F.2d 734, 737 (8th Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 230, 116 L.Ed.2d 187 (1991). *Cf.* U.S.S.G. § 4A1.3, p.s. ("[A] departure below the lower limit of the guideline range for Criminal History Category I *on the basis of the adequacy of criminal history cannot be appropriate* ") (emphasis added).

Next, the district court specifically fashioned Simpson's sentence in order that defendant not lose his job. Apparently the court considered Simpson's family situation, assisting in the support of his wife, two children and two step-children, as well as Simpson's personal circumstances, which included a previous promising basketball career, successful college attendance and emotional support from his father, a former police officer.

■■ Family ties and responsibilities and employment record are not ordinarily relevant in determining whether to grant a downward departure. U.S.S.G. §§ 5H1.5, 5H1.6. Extraordinary circumstances may, however, support departure from the guideline range. *See United States v. Big Crow*, 898 F.2d 1326, 1331 (8th Cir.1990). The departure must be based on factual findings supported by the record. *United States v. Sands*, 908 F.2d 304, 306 (8th Cir.1990). Because the record does not make express the factors upon which the district court relied, we are unable to decide in the first instance whether Simpson's family situation presented extraordinary circumstances supporting a departure.

■■ In pronouncing the sentence, the district court made reference to Simpson's cocaine addiction, both the extent and timing thereof, and his post-shock incarceration efforts to become drug-free. Drug or alcohol dependency does not provide a basis for downward departure. U.S.S.G. § 5H1.4. Therefore, if the decision to depart relied upon Simpson's addiction, the district court erred, requiring resentencing. *See Williams*, — U.S. at ———, 112 S.Ct. at 1119–20. In addition, post-offense rehabilitative efforts, while relevant to whether a defendant qualifies for a decrease in the assigned offense level based on acceptance of responsibility, U.S.S.G. § 3E1.1, comment. (n. 1(g)), do not warrant departing from the guideline in the absence of extraordinary circumstances. *See United States v. Desormeaux*, 952 F.2d 182, 185–86 (8th Cir.1991). *Cf. United States v. Whitehorse*, 909 F.2d 316, 319 (8th Cir.1990) (upholding a reasonable downward departure granted by district court based on totality of the circumstances, to provide defendant with treatment for alcohol abuse at a treatment center, rather than prison where previous treatment efforts had failed).

■ The district court also cited the fact that the conduct for which Simpson was convicted occurred over a short period of time, that is, January 23 to February 20, 1992. Although the Sentencing Commission considered multi-count convictions in formulating the guidelines, U.S.S.G. Ch. 1, Pt. A(4)(e), the

Commission apparently did not consider the duration of criminality except in reference to the type of offense involved, e.g., a single act of robbery versus a continuing environmental offense. Reliance upon this ground for departure would, in itself, seem unreasonable, however, given that the criminality terminated upon defendant's arrest and not on a voluntary basis. However, we have not ruled out the possibility of departure based on a single act of aberrant behavior. *See United States v. Garlich,* 951 F.2d 161, 164 (8th Cir.1991). Though Simpson engaged in more than one act of drug dealing, the question remains, because of the short time that elapsed, whether such conduct qualifies as aberrant behavior warranting a departure. *Cf. id.* (defendant not entitled to a departure as planning and execution of financing scheme to defraud occurred over a one-year period).

■ The government's conduct relating to Simpson's acquisition and possession of food stamps also would seem to have played a role in the district court's decision to grant Simpson a downward departure. The limited record we have, however, does not establish sufficiently egregious conduct alone warranting relief at sentencing.

Finally, we are unable to determine whether the district court relied upon the totality of the circumstances in basing its decision to grant a departure. The factors in any particular case do not exist in isolation. The totality of those individual circumstances may well converge to create the unusual situation not contemplated by the Commission. *See, e.g., Whitehorse,* 909 F.2d at 318–19.

We recognize that the Sentencing Commission intended to decrease sentencing disparity. Application of the guidelines does not, however, entail complete disregard of the individual defendant. In fact, § 3553(a)(1) requires consideration during sentencing of, inter alia, defendant's history and characteristics; Section 1B1.4 of the Sentencing Guidelines provides for consideration of any information at sentencing pertaining to defendant unless otherwise prohibited; Title 28, section 991(b)(1)(B) directs that the Sentencing Commission maintain sufficient flexibility to permit individualized sentences when, inter alia, mitigating factors have not been taken into account.

*Conclusion*

The district court's findings as written do not support the downward departure. Accordingly, we reverse, vacate and remand this case to the district court for resentencing. The district court may supplement, alter or amend the findings as may be justified by the evidence at resentencing, and if supported by the record and its findings, it may enter a departure below the guidelines. Otherwise, Simpson should be sentenced within the guideline range.

With respect to sentencing on remand, we specifically call the trial court's attention to *United States v. Rivera,* 994 F.2d 942 (1st Cir.1993). There, Chief Judge Breyer wrote an excellent analysis of the statutes and guidelines governing the district court's power to impose a departure from the Guidelines sentence and the appellate court's proper function on review. That opinion emphasizes that on factual findings the appellate court should not substitute its judgment and views for that of the sentencing court. That opinion reads, in part:

As we have said, [*United States v. Diaz–Villafane,* 874 F.2d 43 (1st Cir.), *cert. denied,* 493 U.S. 862, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989) ] mandated appellate court 'respect' for sentencing court determinations of fact and of 'direction and degree.' We now extend that 'respect' to sentencing court determinations of whether (and the extent to which) given circumstances make a case 'unusual' or 'not ordinary.' We believe this view consistent with the Supreme Court's recent statement that,

except to the extent specifically directed by statute, "it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence."

*Williams v. United States,* [—— U.S. at ——], 112 S.Ct. at 1121 (quoting *Solem v. Helm,* 463 U.S. 277, 290 n. 16, 103 S.Ct. 3001, 3009 n. 16, 77 L.Ed.2d 637 (1983)); *see also* William W. Wilkins, Jr., *Sentencing Reform and Appellate Review,* 46 Wash. & Lee L.Rev. 429, 443 (1989) (it is not 'appropriate for the appellate court to

simply substitute its judgment *de novo* for that of the sentencing court'). Our view is also consistent with Congress' instruction that appeals courts 'shall affirm' reasonable departures. 18 U.S.C. § 3742(f)(2)-(3). And, it is consistent with appellate court efforts generally to conduct judicial review in light of comparative institutional competence.

*Id.* at 952 (citations omitted).