_____

No. 95-3342
_____

United States of America,      *
                                  *

    Plaintiff-Appellant,     *
                                  * Appeal from the United States
    v.                       * District Court for the
                                  * Northern District of Iowa.
Stephen N. Kalb,         *
                                  *

    Defendant-Appellee.      *

_____

Submitted:  September 10, 1996

Filed:  January 28, 1997
_____

Before BOWMAN, BRIGHT, and LOKEN, Circuit Judges.
_____

LOKEN, Circuit Judge.


After Stephen Kalb pleaded guilty to participating in a methamphetamine manufacturing conspiracy, the district court granted a downward sentencing departure under U.S.S.G. § 5K2.0.  The government appeals, arguing that Kalb's conduct was not a "single act of aberrant behavior" warranting the departure.  Concluding that this is no longer the most relevant inquiry, we remand for further consideration in light of the Supreme Court's recent decision in Koon v. United States, 116 S. Ct. 2035 (1996).

**I.**


In 1990, William Thomas, a methamphetamine distributor, moved to California and became friends with Kalb, a part-time chemistry

student. Thomas provided Kalb with chemicals and equipment to make methamphetamine, but Kalb abandoned the project short of completion and returned the chemicals and equipment to Thomas, who moved to Iowa later that year. In November 1992, Thomas asked Kalb to acquire some hydriodic acid, a chemical used in manufacturing methamphetamine that could be legally purchased in California, but not in Iowa. Kalb shipped six gallons of hydriodic acid to Thomas in Iowa, knowing it would be used to manufacture methamphetamine. Thomas paid Kalb $1,000. Two months later, police arrested Thomas and seized contraband at his methamphetamine laboratory, including the remaining hydriodic acid purchased by Kalb. Thomas agreed to cooperate with authorities and engaged Kalb in a series of taped telephone conversations in which Thomas encouraged Kalb to help manufacture more methamphetamine. When Thomas offered $50,000 in profits, Kalb agreed to purchase chemicals, drive them from California to Iowa, and help Thomas manufacture another batch. Kalb was arrested as he arrived in Iowa with the precursor chemicals.

Kalb's March 1993 plea agreement stated that he could receive a downward departure if he substantially assisted law enforcement authorities. See U.S.S.G. § 5K1.1. The Presentence Report, issued in June 1993 prior to entry of the plea, attributed to Kalb 5.29 kilograms of methamphetamine -- one-quarter kilogram manufactured for Thomas in 1990 plus six kilograms that could have been produced from the hydriodic acid shipped to Thomas in November 1992, reduced by an 85% purity factor. The district court conducted a plea and sentencing hearing in September 1995. After accepting Kalb's guilty plea, the court determined that his guidelines sentencing range is 108 to 135 months in prison, and that he is subject to a mandatory minimum ten-year sentence. See 21 U.S.C. §§ 841(b)(1)(A) and 846. Despite the two year delay between Kalb's plea agreement and his guilty plea and sentencing, the government made no substantial assistance motion. However, Kalb moved for a downward

departure for aberrant behavior. The district court granted a § 5K2.0 departure, explaining:

> [T]he defendant did get involved with Mr. Thomas [in 1990] and started to cook a batch of methamphetamine but abandoned the project; two years later did sell hydriodic acid, which . . . in essence was the single act of [aberrant] behavior, and then . . . the final activity . . . was . . . part of the conspiracy [but] does not take the case out of the situation that allows for a departure [because] Mr. Kalb at least initially was reluctant to get reinvolved, and it was after the offer of the $50,000 that he decided that he would get further involved in the criminal activity.

The court further found that Kalb is eligible for a departure from his mandatory minimum sentence, a finding the government does not challenge. See 18 U.S.C. § 3553(f). Kalb was sentenced to sixty months in prison plus five years of supervised release. The government appeals the grant of a § 5K2.0 downward departure.

## II.

A district court may depart (that is, impose a sentence outside the applicable guidelines sentencing range) if there exists an "aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). Departure is only appropriate in the atypical case, "one to which a particular guideline linguistically applies but where the conduct significantly differs from the norm. . . ." U.S.S.G. Ch.1, Pt.A, intro. comment. 4(b), quoted in Koon, 116 S. Ct. at 2044, and in United States v. Lewis, 90 F.3d 302, 304 (8th Cir. 1996).

In Koon, the Supreme Court considered a case of great notoriety in which the district court had granted an eight-level downward departure based upon five different factors, and the court

of appeals had reversed. The Supreme Court first defined the proper analysis for making departure decisions. Agreeing with then-Chief Judge Breyer's decision in <u>United States v. Rivera</u>, 994 F.2d 942 (1st Cir. 1993), the Court explained that a sentencing court must first ask, "What features of this case, potentially, take it outside the Guidelines' 'heartland' and make of it a special, or unusual, case?" The Court further explained that the initial inquiry is whether each special feature is a "prohibited," "encouraged," "discouraged," or "unmentioned" departure factor *in the Guidelines*. Having made that determination, the sentencing court must then analyze the potential departure factors, singly and in combination, in the following manner:

> If the special factor is a forbidden factor [that is, one that the Sentencing Commission has declared may *never* be the basis of a departure], the sentencing court cannot use it as a basis for departure. If the special factor is an encouraged factor, the court is authorized to depart if the applicable Guideline does not already take it into account. If the special factor is a discouraged factor, or an encouraged factor already taken into account by the applicable Guideline, the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present. If a factor is unmentioned in the Guidelines, the court must, after considering the "structure and theory of both relevant individual guidelines and the Guidelines taken as a whole," decide whether it is sufficient to take the case out of the Guideline's heartland. The court must bear in mind the Commission's expectation that departures based on grounds not mentioned in the Guidelines will be "highly infrequent." 1995 U.S.S.G. ch.1, pt.A.

116 S. Ct. at 2045 (citations to <u>Rivera</u> omitted). The Supreme Court unanimously adopted this analytical approach to departures. The dissenters in <u>Koon</u>, including Justice Breyer, the author of <u>Rivera</u>, disagreed only with its application to the facts in <u>Koon</u>.

Turning to the question of appellate review of departure decisions, the Court in <u>Koon</u> adopted the "unitary abuse-of-

-4-

discretion standard."  See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 403 (1990).  Under this standard, a court of appeals need not defer to the district court's determination of an issue of law, such as "whether a factor is a permissible basis for departure under any circumstances."  But the district court is entitled to deference on most departure issues, including the critical issues of "[w]hether a given factor is present to a degree not adequately considered by the Commission, or whether a discouraged factor nonetheless justifies departure because it is present in some unusual or exceptional way."  116 S. Ct. at 2047-48.  The Court concluded:  "Discretion is reserved within the Sentencing Guidelines and reflected by the standard of appellate review we adopt."  Id. at 2053.

## III.

On this appeal, the parties primarily debate whether Kalb's offense was a "single act of aberrant behavior" as that term has been defined in prior Eighth Circuit departure cases.  The phrase "single acts of aberrant behavior" originates with the Sentencing Commission.  In discussing the general subject of probation and split sentences, the Commission stated that it "has not dealt with the single acts of aberrant behavior that still may justify probation at higher offense levels through departures."  U.S.S.G. Ch.1, Pt.A, intro. comment. (4)(d).  However, in applying that legitimate potential departure factor, our prior cases, and the district court in this case, have not accurately anticipated the Koon-mandated mode of analysis in a number of significant respects.

First, the Sentencing Commission only mentioned "single acts of aberrant behavior" in discussing probation and split sentences.  Thus, it is an *encouraged* factor only when considering crimes in which the offender might be eligible, with a departure, for those modest forms of punishment.  There is nothing in this specific comment, or its context within the Guidelines, that suggests the

-5-

Commission intended to encourage aberrant behavior departures for murderers, drug dealers, and bank robbers, the serious offenses at issue in our aberrant behavior departure decisions in United States v. Weise, 89 F.3d 502, 507 (8th Cir. 1996), United States v. Jenkins, 78 F.3d 1283, 1291 (8th Cir. 1996), United States v. Premachandra, 32 F.3d 346, 349 (8th Cir. 1994), and United States v. Bieri, 21 F.3d 811, 818-19 (8th Cir.), cert. denied, 115 S. Ct. 208 (1994). Under Koon, for a serious crime like Kalb's that cannot warrant probation, a "single act of aberrant behavior" is an unmentioned, not an encouraged departure factor.[1]

Second, our prior cases suggest that the only "aberrant behavior" which may be *considered* for departure purposes is the "single act of aberrant behavior" mentioned in the introductory comment about probation and split sentences.[2] But see United States v. Simpson, 7 F.3d 813, 820 (8th Cir. 1993) (more than one act might "qualif[y] as aberrant behavior warranting a departure"). However, the Guidelines "place essentially no limit on the number of potential factors that may warrant departure." Koon, 116 S. Ct. at 2050, quoting Burns v. United States, 501 U.S. 129, 136-137 (1991). The Commission's introductory comment about single acts of aberrant behavior does not appear in its general discussion of departures. In that discussion, the Commission specifically states that it "does not intend to limit the kinds of factors, whether or not mentioned anywhere else in the guidelines, that could constitute grounds for departure in an unusual case." U.S.S.G. Ch.1, Pt.A, intro. comment. (4)(b). Thus, under Koon, "aberrant

---

[1]The contrary conclusion expressed in United States v. Withrow, 85 F.3d 527, 530 (11th Cir. 1996), was not essential to the court's decision to affirm. More importantly, Withrow was decided the same day as Koon and did not employ the analysis mandated by Koon.

[2]These cases narrowly construed that phrase as meaning "spontaneous and seemingly thoughtless" criminal conduct. United States v. Garlich, 951 F.2d 161, 164 (8th Cir. 1991). The question after Koon is whether any other kind of "aberrant behavior" may ever warrant a departure.

behavior" in general is an unmentioned factor, and the task for the sentencing court is to analyze how and why specific conduct is allegedly aberrant, and whether the Guidelines adequately take into account aspects of defendant's conduct that are in fact aberrant.

Third, when dealing with an unmentioned potential departure factor such as alleged aberrant behavior, Koon instructs the sentencing court to consider the "structure and theory of both relevant individual guidelines and the Guidelines taken as a whole." 116 S. Ct. at 2045 (citation omitted). In this case, we cannot tell from the sentencing record what aspects of Kalb's behavior the district court considered "aberrant," and why that particular kind of aberrant behavior falls outside the heartland *of the guidelines applicable in determining Kalb's sentencing range.* For example, the court stated that Kalb's shipping of six gallons of a precursor chemical was a single aberrant act, but it did not compare this single act to those of other peripheral drug conspirators, such as cocaine and heroin couriers. The court considered Kalb less culpable in 1993 because he was enticed by the promise of exorbitant drug profits, but it did not explain why this made Kalb an "aberrational" drug conspirator. And the court suggested that Kalb was merely a peripheral supplier like the defendant in U.S. v. Posters `N' Things Ltd., 969 F.2d 652, 663 (8th Cir. 1992), aff'd on other grounds, 511 U.S. 513 (1994), but it did not analyze the factual distinctions between the two cases to determine whether this case, too, is outside the heartland.

At sentencing, the parties and the district court focused primarily on whether Kalb's conduct fit the definition of a "single act of aberrant behavior" adopted in prior Eighth Circuit cases. This is only the beginning of the departure analysis Koon now requires, an analysis which, when properly conducted, is entitled to deferential review on appeal. Accordingly, the judgment of the district court is reversed and the case is remanded for resentencing in accordance with this opinion.

-7-

BRIGHT, Circuit Judge, dissenting.

## I. INTRODUCTION

I respectfully dissent. Federal judges, especially district court judges, are dismayed at the impact of mandatory and guideline sentencing. See United States v. Hiveley, 61 F.3d 1358, 1365 (8th Cir. 1995) (Bright, J., concurring) (discussing federal judges' dissatisfaction with sentencing guidelines and citing Federal Judicial Center, *Planning for the Future: Results of a 1992 Federal Judicial Center Survey of United States Judges* (1994)). These sentencing schemes essentially take the discretionary power to determine the length of a defendant's sentence away from Article III judges and place it in the hands of prosecutors who control the charges brought against a defendant.

The Supreme Court in Koon v. United States, 116 S. Ct. 2035, 2046-47 (1996), however, recognized that judicial discretion plays a role in sentencing and that sentences resulting from guideline departures are appropriate in certain circumstances. Koon sends a signal to appellate courts to extend a greater measure of deference to district courts' discretion in sentencing. In this case, Judge Melloy, an experienced jurist, made a fair and reasonable decision supported by adequate grounds for departing. We should affirm.

## II. DISCUSSION

In Koon, the Supreme Court instructed appellate courts to accord sentencing courts greater discretion in their decisions to depart from the guidelines. Koon, 116 S. Ct. at 2043 (recognizing abuse of discretion rather than *de novo* standard of review); see also United States v. McNeil, 90 F.3d 298, 300-01 (8th Cir. 1996) (citing Koon). The Court emphasized that the Sentencing Guidelines "authorize[] district courts to depart in cases that feature aggravating or mitigating circumstances of a kind or degree not

adequately taken into consideration by the Commission." Koon, 116 S. Ct. at 2044. Because the guidelines authorize a district court to depart, a district court's decision to depart is entitled to "substantial deference, for it embodies the traditional exercise of discretion by a sentencing court." Id. at 2046. On appeal, therefore, this court must ask whether the district court's ground for departure "is a permissible basis for departure under any circumstances," and if so, whether the district court abused its discretion by finding the factor "present to a degree not adequately considered by the Commission." Id. at 2047. In conducting our review, we must recognize the district court's institutional advantage in assessing guidelines cases. Id.

My view of this case differs from the majority's in four ways. First, I believe aberrant behavior constitutes an encouraged factor, rather than an unmentioned factor, according to the Sentencing Commission's comments. Second, the district court satisfied the requirements laid out in Koon. Third, I believe Koon and United States v. McCarthy, 97 F.3d 1562 (8th Cir. 1996), demonstrate that the district court in this case did not abuse its discretion and support affirming the sentence. Finally, I believe the majority's opinion may lead to confusion regarding the appropriate analysis for district courts to undertake when considering whether a defendant's conduct constitutes aberrant behavior justifying a departure.

> **A.** **Aberrant Behavior Constitutes an Encouraged, Rather Than Unmentioned, Factor for District Courts to Consider under the Sentencing Guidelines.**

Although the majority's opinion recognizes that the district court relied on an appropriate factor for its departure, aberrant behavior, the majority mischaracterizes aberrant behavior as an "unmentioned" factor under the guidelines, rather than an "encouraged" factor. Slip op. at 6. According to Koon, a district

-9-

court may depart from the guidelines based on an encouraged factor if the court finds the applicable guideline did not take the factor into account. Koon, 116 S. Ct. at 2045. A district court may depart from the guidelines based on an unmentioned factor, however, only after finding that "the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." Id. (citation omitted). Although I believe this court should affirm the district court's decision to depart under that characterization, I believe characterizing aberrant behavior as an encouraged factor and analyzing the district court's decision accordingly would better maintain the integrity of our analysis.

The majority concludes that because the Commission "only mentioned 'single acts of aberrant behavior' in discussing probation and split sentences . . . . it is an *encouraged* factor only when" the case concerns the possibility of probation. Slip op. at 5. The majority goes on to infer that aberrant behavior must be an unmentioned factor for all other "serious offenses" because the Commission did not mention its inability to deal with aberrant behavior elsewhere in its comments. Id. Thus, according to the majority's analysis, if a district court relies on aberrant behavior to depart downward from a higher offense level's guideline range to sentence a defendant to probation, the guidelines encourage the district court's consideration of aberrant behavior. If the district court relies on aberrant behavior for departing downward from a higher offense level's guideline range to sentence a defendant to a shorter prison term, however, the majority's opinion favors treating aberrant behavior as an unmentioned factor.

I cannot agree with this result. In my opinion, whether aberrant behavior constitutes an encouraged or unmentioned factor should not turn on the type of punishment imposed, but rather on the language and intent of the Sentencing Commission. Although not

discussed in the Commission's general discussion of departures, the discussion in the probation setting acknowledges the Commission's inability to accommodate aberrant behavior in the guidelines as a whole: "The Commission, of course, has not dealt with the single acts of aberrant behavior that still may justify probation at higher offense levels through departures." U.S.S.G. Ch.1, Pt.A, intro. comment. 4(d) (emphasis added). The Commission's inability to accommodate aberrant behavior in the context of probation and split sentences is not diminished when the issue concerns the length of the defendant's prison term.

In addition, the Commission intended aberrant behavior to be an encouraged factor, even for serious offenses, because it expressly recognized the possibility of departing downward from the prison terms at "higher offense levels" to probation or split sentences. Id.; see also United States v. Withrow, 85 F.3d 527, 530 (11th Cir. 1996) ("All circuits that have addressed and resolved the question . . . have concluded that single acts of aberrant behavior were excluded from consideration in the formulation of the guidelines and thus might justify sentences below the guideline range even in cases where probation is not a viable option." (emphasis added) (citation omitted)). Whether a district court departs downward from the guidelines range to a shorter prison term, or departs downward to probation or a split sentence in no way changes whether the court relied on an encouraged or unmentioned factor. Consequently, I believe courts should treat aberrant behavior as an encouraged factor for departures because the Commission acknowledged its inability to accommodate aberrant behavior within the structure of the guidelines.

**B.   The District Court's Opinion Satisfies the Requirements Established in Koon.**

At issue here is whether the district court abused its discretion by determining that "the misconduct which occurred in the particular instance suffices to make the case atypical," keeping in mind the district court's "institutional advantage over appellate courts in making these sorts of determinations [because] . . . they see so many more Guidelines cases than appellate courts do." Koon, 116 S. Ct. at 2047. The Supreme Court recognized that the district court's decision "is apt to vary" from case to case because whether the misconduct makes the case atypical is a factual matter. Id. Thus, given the district court's institutional advantage and the inherently factual nature of the inquiry, this court must accord the district court's decision substantial deference. See id. at 2046.

In this case, the district court supported its finding of aberrant behavior on its findings that (1) Kalb began making methamphetamine under Thomas' direction, but stopped once he realized what he was making; (2) Kalb sold a legal precursor chemical to Thomas ("the real gravamen" of his offense); and (3) Kalb reluctantly traveled to Iowa with chemistry equipment only because Thomas lured him with the promise of $50,000. (Appellant's App. at 17-18 containing sentencing transcript). The district court also described Kalb's case as sufficiently similar to United States v. Posters 'N' Things, Ltd., 969 F.2d 652, 663 (8th Cir. 1992) (affirming district court's downward departure for low-level supplier of diluent chemicals in drug scheme who was not involved in manufacture or distribution of drugs), to justify the departure. Appellant's Appendix at 19. In addition, the record includes testimonials from several members of Kalb's community attesting that his criminal conduct was out of character. (See Appellee's App. at 1-10). I believe the reasons given by the district court, its reliance on our decision in Posters 'N' Things, and the record as a whole demonstrate that the district court exercised its discretion appropriately. The district court's opinion, in essence, is supported by Koon.

Furthermore, according to <u>Williams v. United States</u>, 503 U.S. 193, 201-03 (1992), and <u>United States v. Walters</u>, 87 F.3d 663, 671 (5th Cir. 1996), remanding the case for resentencing is unnecessary if the district court clearly intended to depart from the Guidelines and any ambiguity in its reasoning would not result in a different sentence. Thus, assuming arguendo that the district court's explanation was less than thorough, I believe the district court's decision to depart from the guidelines contained clear and adequate support in the record for this court to affirm the district court's decision without remanding the case for more particularized findings.

**C.    Precedent Supports Granting District Court Substantial Deference and Affirming Departure.**

Remanding this case to the district court for a more detailed explanation of its decision also appears inconsistent with the Supreme Court's disposition of a similar issue in <u>Koon</u> and this court's decision in <u>United States v. McCarthy</u>, 97 F.3d 1562 (8th Cir. 1996). When reviewing the downward departures in <u>Koon</u>, the Supreme Court discussed the district court's reliance on "successive prosecutions" to justify its departure. <u>Koon</u>, 116 S. Ct. at 2053. Although "consideration of this factor could be incongruous with the dual responsibilities of citizenship" and "[s]uccessive state and federal prosecutions do not violate the Double Jeopardy Clause," the Court ruled that the district court did not abuse its discretion by departing downward. <u>Id.</u> (citations omitted). The Court did not remand the case for more extensive explanations of these findings even though the district court never delved into the unique factual circumstances of the case or detailed how the case differed from typical guidelines cases. Instead, the district court merely stated that the defendants had previously been acquitted of state charges for the same conduct, and that "the successive state and federal prosecutions, though legal, raise a specter of unfairness." <u>United</u>

States v. Koon, 833 F. Supp. 769, 786 (C.D. Cal. 1993); see also id. at 790. In addition, the district court made a passing reference to the "combined extraordinary circumstances of this case," and the "unusual circumstances of the underlying conduct" without further elaboration. Id. at 790-91.

As discussed above, the district court in this case articulated its reasons for finding aberrant behavior with support in the record. First, unlike the departure in Koon, consideration of the aberrant behavior does not raise concerns about the dual responsibility of citizenship or other federalism issues. In addition, whereas the district court in Koon supported its decision with unspecified references to "unusual circumstances," the district court in Kalb's case identified particular facts in the record demonstrating the aberrant nature of Kalb's conduct. (See Appellant's App. at 18-20). As further support for its decision, the district court noted that it found Kalb's conduct analogous to that in Posters 'N' Things. Id. at 19-20. Thus, the district court's explanation for its departure included more specificity than the district court decision affirmed by the Supreme Court in Koon.

Likewise, the Eighth Circuit recently affirmed an *upward* departure reasoning that the district court was due substantial deference despite

concerns about the appropriateness of the departure factors[1].  In <u>United States v. McCarthy</u>, 97 F.3d 1562,

---

[1]Other circuits also uphold departures without remanding for detailed or extensive explanations from the district court, thus granting district courts the ability to appropriately exercise their traditional discretion.  <u>See, e.g.</u>, <u>United States v. Rioux</u>, 97 F.3d 648, 662-63 (2d Cir. 1996) (noting that factors used to support departure were "not ordinarily relevant," but ruled that the district court never abused its discretion by finding that defendant's case differed significantly from heartland cases); <u>United States v. Barajas-Nunez</u>, 91 F.3d 826, 832 (6th Cir. 1996) ("Although we believe that the district court's findings . . . do not support a lesser harms departure, . . . we cannot find that any error . . . is plain, given . . . the deference owed to the district court's determination that the case falls outside a guideline's heartland." (citing <u>Koon</u>, 116 S. Ct. at 2046-47)); <u>United States v. Grandmaison</u>, 77 F.3d 555, 563 (1st Cir. 1996) (emphasizing importance of district court's ability to consider "the totality of the circumstances," rather than rigid formulaic standard, when determining whether to depart based on aberrant behavior); <u>United States v. Takai</u>, 941 F.2d 738, 743 (9th Cir. 1991) (allowing district court to exercise discretion to depart based on aberrant behavior even if defendant committed several acts culminating in one criminal act); <u>accord</u> <u>United States v. Simpson</u>, 7 F.3d 813, 820 (8th Cir. 1993) (leaving open possibility that district court properly exercising its discretion could depart based on aberrant behavior even though defendant committed several criminal acts).

1581 (8th Cir. 1996), the district court departed upward from the guidelines for three unmentioned factors. The district court decided the heartland of cases under the guideline for using buildings to store marijuana did not encompass cases in which (1) the charge was incommensurate with the defendant's acts, (2) the defendant reaped a large return on his investment, and (3) the defendant knew his business laundered money. Id. This court affirmed without requiring the district court to extensively elaborate about how the case differed from other guidelines cases. Id.; see also United States v. One Star, 9 F.3d 60, 61 (8th Cir. 1993) (affirming district court's decision to depart based on "not ordinarily relevant" factors).

I believe this court's treatment of a district court's decision to depart from the guidelines in McCarthy requires us to affirm the district court's decision in this case. According to the majority's analysis, both cases concerned departures based on unmentioned factors. In McCarthy the district court relied on the defendant's large return on his investment and his knowledge of his business' use in criminal activities to support its conclusion that the case fell outside the guideline's heartland. McCarthy, 97 F.3d at 1581. This court did not require the district court to further elaborate about why the defendant's profits or knowledge were

-16-

extraordinary, nor did this court remand for the district court to compare how other people allowing their business' to store marijuana differed from the defendant in terms of profit or knowledge. See id. In Kalb's case, however, the majority remands for further explanation and comparison because the district court relied on the defendant's susceptibility to enticements of large profits and reluctance to participate in the conspiracy. The factors relied on by the district court in Kalb's case to depart downward from the guidelines are merely the inverse of the factors relied on by the district court in McCarthy to depart upward from the guidelines. Likewise, both district judges regarded the guidelines ranges as incommensurate with the defendants' acts. The only discernable distinction between this case and McCarthy appears to be that the former concerned a downward departure and the latter an upward departure. The discretion this court affords to district courts' decisions to depart from the guidelines cannot be dictated by the direction of the departure.

### D.    Proper Inquiry upon Remand.

Finally, I do not agree with the requirements on remand set forth by the majority. The majority's opinion calls for the district court to compare Kalb's conduct and motivation to other drug couriers and explain "why this made Kalb an 'aberrational' drug conspirator." Slip op. at 7. The majority's opinion requires the district court to explain how Kalb's acts were aberrant for a drug courier -- in other words, how Kalb's conduct differed from "typical" drug couriers. Whether a defendant's conduct constitutes aberrant behavior, however, is not determined by comparing the actions, taken in isolation, with other defendants to decide if the behavior was unusual. Rather, the district court should determine whether the behavior was more unusual for the particular defendant to engage in given the unique characteristics of the defendant, that is, whether Kalb's acts were more or less aberrant for Kalb to

-17-

undertake, given his background, family, work experience, disposition, etc., than for a typical drug courier.

**III.  CONCLUSION**

The Supreme Court recognizes that district courts retain their traditional discretion to depart from the guidelines for atypical cases and possess a unique institutional advantage to discern the typical cases from the atypical.  This court should do no less.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-18-