UNITED STATES,

v.

David DELVALLE, Defendant.

No. 95 CR 1120(JBW).

United States District Court,
E.D. New York.

July 11, 1997.

Zachary W. Carter, by David Porter, Brooklyn, NY, for Government.

Law Office of William V. Ferro, by Richard E. Noll, New York City, for Defendant.

Memorandum and Judgment

WEINSTEIN, Senior District Judge:

Defendant was arrested in mid-November 1995 at John F. Kennedy International Airport for attempting to assist in the retrieval of five suitcases containing 79.8 kilograms of cocaine. He pled guilty to conspiracy to possess with intent to distribute cocaine in violation of sections 841(b)(1)(B) and 846 of title 21 of the United States Code. A substantial downward departure is required for reasons set out below.

## I. Facts

The second eldest of five siblings, defendant, now 31 years old, was born in East Rutherford, New Jersey. He lived there for the first year of his life, after which his family moved to Puerto Rico. The family returned to New Jersey when defendant was 16 years old, and he has resided there since. He continues to maintain a close relationship with his family, particularly his parents. He has had no previous involvement with drugs, drinks alcohol only socially and in moderation, and has not demonstrated violent tendencies.

While living in Puerto Rico defendant attended school at night. Intent upon becoming a mechanic, he withdrew after completing the ninth grade. He began working as a gas station attendant at the age of 15, and later attempted—without success—to open his own repair shop. He has worked steadily as a mechanic at a number of garages. Immediately prior to recent events defendant had been holding down two mechanic jobs—one during the day, the other at night—at different garages, earning in the neighborhood of $1300 a week.

In 1996, while released on bail for the instant offense, defendant married his sweetheart of 14 years. They had been living together since 1986. They enjoy a committed relationship for which defendant has been the primary financial provider. They have no children.

Defendant's incarceration—he was remanded in May 1996—has been a financial, emotional and physical hardship on his wife. Since his arrest she has been employed as an administrative assistant. She is presently searching for a second job. She resides in a small house which she now shares with her sister and nephew in order to defray monthly living expenses. The couple's only asset is their 1991 Pontiac. They carry a debt surpassing $25,000. Defendant's wife has experienced a number of health problems—stress, dehydration and anxiety—since her husband's remand. Previously she was in good health.

Defendant became embroiled in the instant offense when, on November 6, 1995, he was telephoned by a childhood friend with whom he had recently been reunited while on vacation in Puerto Rico. The friend asked if defendant would do him the favor of picking him up at J.F.K. When defendant arrived at the airport he was, to his surprise, asked to act as a "lookout." Aware that doing so was criminal, defendant nevertheless remained to help his friend. A suitcase containing drugs was placed in the trunk of his car, and defendant drove home. Later that day someone arrived at defendant's house, took the suitcase and gave defendant $3,500.

Eight days later defendant was again contacted by the friend, who instructed him to pick up yet another person—an individual with whom defendant had been acquainted since 1991—and his luggage at J.F.K. He initially balked, but after being importuned by his friend, acquiesced. At the airport he did not meet the acquaintance. That night the friend called and requested that defendant return to J.F.K. the following day. Defendant again refused, explaining that he could not miss another day of work. Upon being told that he would receive $10,000, he acceded. The next day defendant met the acquaintance at J.F.K.

Defendant went with the acquaintance into the terminal to retrieve the luggage which had arrived the day before. Upon being informed by airline officials that the luggage had gone unclaimed, drug enforcement agents had already determined that the five pieces contained cocaine. The acquaintance entered a luggage storage room with airline officials to claim the bags while defendant waited in the main area of the terminal. After he identified the bags agents arrested the acquaintance.

Defendant indicated that he knew the man in the agents' custody. He was then arrested. He promptly and freely told the government all that he knew of the events

It is uncontested that defendant's role in the offense was limited. He knew neither the type nor quantity of drugs contained in the five suitcases. He had no ownership interest in the luggage or the drugs. He did not attempt to claim the luggage himself, but only waited for his acquaintance to do so. He did not arrange for the transport of the

drugs or for his acquaintance's airline tickets. Defendant only agreed to drive to J.F.K. and pick up his acquaintance as a favor to his friend. He never received the $10,000 he was promised.

Under the Guidelines and the law interpreting them defendant is accountable for all 79.8 kilograms of cocaine. The base offense level for this offense, according to the Sentencing Guidelines, is 36, requiring a sentence in the range of 188 to 235 months in prison for a defendant in criminal history category I, as is this defendant. U.S.S.G. § 2D1.1(c)(2). Because defendant satisfies the five mitigating factors for the safety valve adjustment, a 2 level reduction is warranted. U.S.S.G. §§ 2D1.1(b)(4) and 5C1.2. Since defendant's role was minimal, a reduction of 4 levels is mandated. U.S.S.G. § 3B1.2(a). An additional 3 level reduction is required because of defendant's acceptance of responsibility. U.S.S.G. § 3E1.1(b)(2). After these adjustments, the defendant's total offense level is 27, requiring a sentence in the range of 70 to 87 months in prison.

## II. Bases for Downward Departure

Defendant urges the court to exercise its discretion to depart downward on four distinct grounds: (1) that incarceration would impose extraordinary hardship upon his family, (2) that his participation in the offense was an act of aberrant behavior, (3) that defendant provided substantial assistance to the government with the full knowledge that he would not receive a 5K1.1 letter expressing the government's motion for downward departure, and (4) that he is rehabilitated. The court has the power to depart downward.

■■■ Discretion on family hardship grounds is not appropriate. *Cf. United States v. Malpeso,* 943 F.Supp. 254, 257 (E.D.N.Y.1996) (seriousness of offense outweighs family hardship). A downward departure on this ground is permitted only when the defendant demonstrates that the Guideline-mandated sentence will impose extraordinary hardship upon defendant's family. *See, e.g., United States v. Galante,* 111 F.3d 1029 (2d Cir.1997); *United States v. Londono,* 76 F.3d 33 (2d Cir.1996); *United*

*States v. Johnson,* 964 F.2d 124, 128–29 (2d Cir.1992) (courts are "reluctant to wreak extraordinary destruction on dependents"). Emotional and physical strain on defendant's wife is clear. She has been present at every court proceeding, testified at sentencing, and appeared visibly shaken and fatigued. She has, however, managed to support herself adequately. There is here no concern for dependent children

■■■ Downward departure on the grounds that defendant's conduct was aberrant is warranted. Aberrant conduct or behavior is unmentioned in the Guidelines and therefore is not an encouraged departure factor. *See United States v. Kalb,* 105 F.3d 426, 429 (8th Cir.1997). The Guidelines discuss "single acts of aberrant behavior" in an introductory comment pertaining only to probation and split sentences. *See* U.S.S.G. Ch. 1, Pt. A, intro. comment. (4)(d). The Guidelines, however, "place essentially no limit on the number of potential factors that may warrant departure." *Koon v. U.S.,* —— U.S. ——, ——, 116 S.Ct. 2035, 2050, 135 L.Ed.2d 392 (1996); U.S.S.G. Ch. 1, Pt. A, intro. comment. (4)(b) (Commission "does not intend to limit the kinds of factors, whether or not mentioned anywhere else in the guidelines, that could constitute grounds for departure in an unusual case").

Because aberrant conduct or behavior is an unmentioned departure factor, it must be considered in the context of the "structure and theory of both relevant individual guidelines and the Guidelines taken as a whole," *Koon v. U.S.,* —— U.S. ——, ——, 116 S.Ct. 2035, 2045, 135 L.Ed.2d 392 (1996). The sentencing court must determine whether defendant's aberrant behavior in the instant case falls outside the heartland of the applicable Guidelines. *See, e.g., United States v. Schmick,* 21 F.3d 11, 12 (2d Cir.1994); *United States v. Ritchey,* 949 F.2d 61, 63 (2d Cir.1991); *United States v. Simpson,* 7 F.3d 813, 820 (8th Cir.1993) (more than one act might "qualif[y] as aberrant behavior warranting a departure"); *United States v. Takai,* 941 F.2d 738, 743 (9th Cir.1991) (two crimes—conspiracy and offer of bribe—sufficiently closely related to be considered single act for purpose of deciding if aberrant); *cf. United States v. Winters,* 105 F.3d 200, 207

(5th Cir.1997) (single act of aberrant behavior).

Defendant's offense conduct—on both November 8 and 15, 1995—was aberrant in two senses. First, it was aberrational in comparison to the conduct of other drug conspirators covered by the applicable Guidelines. *See United States v. Kalb,* 105 F.3d 426, 429 (8th Cir.1997) (particular behavior falling outside of heartland; "aberrational" drug dealer). Second, it was aberrational in the sense that the offense conduct deviated from defendant's own typical behavior. *See, e.g., United States v. Pena,* 930 F.2d 1486, 1495, (10th Cir.1991) (defendant's conduct an aberration from usual conduct). As to the first point, it is uncontested that defendant was reluctantly doing a favor for a friend, was only a driver, had no interest or involvement in possession or distribution of the contraband, and did not know the specifics of what was being transported—differentiating him from drug conspirators that fall into the "heartland" cases. As to the second point, defendant's brief meander into criminal activity stands in stark contrast to his posture as a responsible, hard working, fully employed member of the community and a loving, involved and reliable husband and family member. *See Pena,* 930 F.2d at 1495 (Defendant's "behavior here was an aberration from her usual conduct, which reflected long-term employment, economic support for her family, no abuse of controlled substances, and no prior involvement in the distribution of such substances ... [This] justified a departure").

That defendant's involvement occurred on two different days, separated by a week, is not decisive. His November 8 and 15 trips were so closely related that they can be understood as a unitary instance of behavior.

The conclusion that defendant's conduct was aberrant is further supported by his conduct after arrest. He went to great effort to provide assistance to the government and the judicial system. He did so even after he was advised by the government that a 5K1.1 letter in consideration for "substantial assistance" would not be forthcoming. Defendant met with Assistant United States Attorneys in this and other districts, as well as F.B.I. agents. He candidly provided what the government concedes to be useful information. He has demonstrated a willingness to be called upon to testify before a grand jury in another jurisdiction. The government concedes that were there a prosecution of another individual, the defendant would have received a 5K1.1 letter.

Defendant's unusual post-arrest conduct, given the absence of a 5K1.1 incentive, also exemplifies his sincere contrition and therefore, his substantial prospects for rehabilitation. Prospects for, and efforts at, rehabilitation have been recognized as appropriate grounds for downward departure. *See, e.g., United States v. Wong,* 40 F.3d 1347, 1382 (2d Cir.1994) ("it is well established that a district court should consider a defendant's potential for rehabilitation in determining a sentence") (citing 18 U.S.C. § 3553(a)(1), (2)(D)), *cert. denied,* —— U.S. ——, 116 S.Ct. 190, 133 L.Ed.2d 127 (1995); *United States v. Barton,* 76 F.3d 499, 503 (2d Cir.1996); *United States v. Guiro,* 887 F.Supp. 66 (E.D.N.Y. 1995) (5K1.1 and prospects for rehabilitation grounds for downward departure); *United States v. Neiman,* 828 F.Supp. 254 (S.D.N.Y. 1993) (downward departure based on prospects for rehabilitation), *United States v. Cotto,* 793 F.Supp. 64 (E.D.N.Y.1992) (downward departure based on, inter alia, efforts at rehabilitation); *cf. United States v. Maier,* 975 F.2d 944 (2d Cir.1992) (post-offense progress in drug rehabilitation); *United States v. Davis,* 763 F.Supp. 645 (D.D.C. 1991) (likelihood of successful rehabilitation from drug problem warrants downward departure); *but see United States v. Cabell,* 890 F.Supp. 13, 21 (D.D.C.1995) (no departure for potential for rehabilitation).

While defendant's post-offense conduct arguably supports departure under Guideline section 5K2.0 for assistance to the judicial system beyond that contemplated by sections 3E1.1 or 5K1.1, there is no need to rely on this ground because those already discussed are sufficient for an adequate downward departure. *See United States v. Garcia,* 926 F.2d 125, 127–28 (2d Cir.1991) ("activities facilitating the proper administration of justice in the District Courts"); *cf. United States v. Huerta,* 878 F.2d 89, 91 (2d Cir. 1989) (departure for substantial assistance to the government pursuant to section 3553(e) of title 18 and section 5K1.1 may not be made

absent a motion by the government); *United States v. Rexach,* 896 F.2d 710, 713 (2d Cir.) (decision to make 5K1.1 motion "expressly lodged in the prosecutor's discretion"), *cert. denied,* 498 U.S. 969, 111 S.Ct. 433, 112 L.Ed.2d 417 (1990).

### III. Statutory Safety Valve

Violation of section 841(b)(1)(B) requires a statutory minimum term of imprisonment of 5 years. Because defendant is in criminal history category I, was not an organizer or leader in the offense, did not use violence in connection with the offense, truthfully provided the government all the information in his possession, and the offense did not result in death or serious bodily harm to anyone, the statutory minimum does not apply. *See* 18 U.S.C. § 3553(f).

### IV. Conclusion

The court departs downward 12 levels to level 15. Since he appears to be fully rehabilitated defendant is sentenced to 18 months—the bottom end of the Guideline range. A supervised release term of 4 years and a special assessment of $50.00 is imposed. In view of his lack of assets, no fine is imposed.

So ordered.